Argued and submitted September 1, 2005, judgment for defendant on plaintiffs'
claims for unused sick leave reversed and remanded; otherwise affirmed
December 6, 2006

Gregory J. MADSON
and Kevin L. Brusett,
*Appellants,*

*v.*

WESTERN OREGON CONFERENCE ASSOCIATION
OF SEVENTH-DAY ADVENTISTS,
an Oregon non-profit corporation,
dba Oregon Conference of Seventh-Day Adventists,
dba Portland Adventist Academy,
*Respondent.*

0211-11700; A124779

149 P3d 217

Barbee B. Lyon argued the cause for appellants. With him on the briefs were Vicki A. Ballou, Amy Joseph Pedersen, and Tonkon Torp LLP.

Bradley F. Tellam argued the cause for respondent. With him on the brief were Allyson S. Krueger and Barran Liebman LLP.

Before Schuman, Presiding Judge, and Brewer, Chief Judge,* and Ortega, Judge.

BREWER, C. J.

---

* Brewer, C. J., *vice* Wollheim, J.

## BREWER, C. J.

Plaintiffs Brusett and Madson appeal from a judgment denying their motion for summary judgment, granting the summary judgment motion of defendant Western Oregon Conference Association of Seventh-Day Adventists, and dismissing their statutory claims for unpaid wages. The issues on appeal are whether, on termination of their employment with defendant, both plaintiffs were entitled to payment for unused sick leave and whether plaintiff Madson was entitled to termination pay. We affirm in part, reverse in part, and remand.

The facts are largely undisputed. Plaintiffs Brusett and Madson were teachers at a high school owned and operated by defendant, and they worked for defendant for 17 and 18 years, respectively. In May 2002, defendant notified Brusett that it would not renew his contract for the following school year. In June 2002, defendant offered Madson a 10-month contract for the 2002-03 school year, rather than a 12-month contract as in previous years. Madson did not accept the offered contract. Thus, neither Brusett nor Madson returned to work for defendant in the 2002-03 school year.

Defendant paid Brusett a termination settlement and paid both plaintiffs for their unused accrued vacation. However, defendant rejected Brusett and Madson's requests for payment of unused sick leave and also declined to pay Madson a termination settlement. Brusett and Madson filed a complaint under ORS 652.140(1),[1] seeking unpaid wages, statutory penalties, and attorney fees.

In cross-motions for summary judgment, the parties agreed that the proper resolution of their dispute hinged on their divergent interpretations of the provisions of defendant's employment policy manual, which was expressly incorporated into plaintiffs' employment contracts. Both

---

[1] ORS 652.140(1) provides that "[w]henever an employer discharges an employee or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge or termination shall become due and payable not later than the end of the first business day after the discharge or termination."

plaintiffs asserted that the policy manual's provisions unambiguously entitled them to be paid for earned, but unused, sick leave. Plaintiff Madson further asserted that, under the terms of the manual, he was entitled to termination pay. The trial court determined that the policy manual's provisions are unambiguous and do not provide for the contested sick leave pay or termination pay. Accordingly, the court granted defendant's motion for summary judgment and denied plaintiffs' corresponding motion.

On appeal, plaintiffs assign error to the denial of their motion for summary judgment and to the entry of summary judgment for defendant and renew their arguments that the provisions of the policy manual unambiguously require payment of the disputed compensation. When, as here, the pertinent facts are not in dispute, we review rulings on cross-motions for summary judgment to determine whether either party is entitled to judgment as a matter of law, viewing the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the party opposing the motion. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); *Cochran v. Connell*, 53 Or App 933, 939, 632 P2d 1385, *rev den*, 292 Or 109 (1981).

■ Plaintiffs' arguments on appeal focus on the provisions of defendant's policy manual, which, as noted, is a part of plaintiffs' employment contracts. In construing the relevant provisions, we apply the test set out in *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997). First, we examine the text of the disputed provisions in the context of the document as a whole. *Id.* at 361. If, based on that examination and a review of the circumstances of the contract's formation, the meaning of the provisions is clear, we construe the terms as a matter of law. *Id.* If the text, context, and circumstances of the contract's formation show that the agreement is ambiguous, a trier of fact, in attempting to resolve that ambiguity, is to consider "extrinsic evidence of the contracting parties' intent." *Id.* at 363. If those inquiries fail to establish the parties' intent, the ambiguity is resolved by resort to other relevant maxims of construction. *Id.* at 364.

■   Whether a contract is ambiguous is a question of law. *Id.* at 361. A contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 313, 129 P3d 773, *rev den*, 341 Or 366 (2006). If a contract's provisions are mutually inconsistent regarding a subject, the contract is ambiguous as to that subject, *Alpine Mountain Homes v. Bear Creek Homes*, 202 Or App 390, 398, 122 P3d 111 (2005); *Portland Fire Fighters' Assn. v. City of Portland*, 181 Or App 85, 91, 45 P3d 162, *rev den*, 334 Or 491 (2002), unless the provisions can be reconciled in reading the contract as whole. *See Yogman*, 325 Or at 361. Generally, when the terms of a contract are ambiguous, summary judgment regarding their meaning is not appropriate. *Brown v. American Property Management*, 167 Or App 53, 61, 1 P3d 1051, *rev dismissed*, 331 Or 334 (2000).

■   Plaintiffs' first two assignments of error relate to the trial court's summary judgment rulings on the claims for payment of unused sick leave. We turn to the pertinent provisions of the policy manual. Section 4214:98.2 of the policy manual describes various types of "leave" that defendant provided for "Certificated/Professional Personnel," including leaves for bereavement, illness, personal reasons, jury duty, pregnancy/maternity, paternity, adoption, and professional growth. With regard to sick leave, the provision states:

"a.   When employees are sick or impaired to the extent of being unable to reasonably perform all regular duties or would expose others to illness or injury, they are not expected to report for work.

"* * * * *

"d.   Sick leave is intended only in the case of personal illness or injury of the employee. A maximum of three days of personal sick leave may be used to care for illness/injury of immediate family members.

"* * * * *

"f.   During the contract year certified employees are eligible for up to a maximum of 20 sick leave working days.

"g.   The employing organization will consider unusual cases on an individual basis.

"h.  In the case of an industrial accident which is covered by Worker's Compensation insurance, full pay less compensation pay will be granted for a period equal to unused sick leave time."

The sick leave provision does not expressly address whether the full 20 days of sick leave is available to the employee when the contract year begins or as it progresses. Nor does it address whether unused sick leave carries over into a subsequent contract year or whether an employee is entitled to be paid for unused sick leave on termination. In defendant's view, the absence of provisions specifically addressing those issues reveals its unambiguous intention not to provide for the carry-over of, or payment for, unused sick leave. As defendant understands the sick leave provision, an employee's entitlement to a "maximum of 20 sick leave working days" suggests that the employee may be entitled to fewer than 20 days of sick leave if he or she is not sick for 20 days. Finally, because the sick leave provision states that sick leave is intended "only in the case of personal illness or injury of the employee," defendant contends—and the trial court agreed—that sick leave is earned and paid only when the employee is sick. We agree with defendant that the sick leave provision itself plausibly supports defendant's position that sick leave does not accrue pro rata during the year, that it is not "banked," and that it must be taken during the contract year or it is lost.[2] However, the matter does not end there.

---

[2] In contrast, Section 4212:99.2 of the policy manual, relating to vacation time for employees with 12-month contracts, refers expressly to "accrued" vacation time and describes circumstances in which accrued vacation time might carry over to the following year or be paid in cash:

"b.  Unused Vacation Time

"Vacation time should generally be taken in the year of accrual. It will be assumed that exempt (salaried) employees have taken their vacation annually unless a written request is made by the employee to the employer for a carry-over to the following year or a formal reporting/accounting system is in place. Vacation may be used at such time or times when requested by the employee and approved by the employing organization. * * *

"c.  When an employee is transferred from one denominational organization to another, accrued vacation time of up to 150% of vacation entitlement including current year accruals, shall be paid in cash by the former employer to the employee at the time of transfer. The accrued amount will be equal to the amount the employee would receive while taking vacation entitlement before the transfer or termination begins."

Plaintiffs point to two other provisions of the policy manual that, they contend, require a different conclusion. Section 4118:00.4 addresses a terminated employee's entitlement to a "settlement" on termination. It provides, in part:

> "The settlement shall be a payment equal to 25 percent of one month's salary excluding area travel and all other allowances for the years of denominational service credit. No more than 20 years of full-time service shall be counted. (* * * *Any unpaid benefits earned by the employee, including but not limited to unpaid vacation time and unpaid sick time, are not part of this settlement and shall be paid separately to the employee.)*"

(Emphasis added.) According to plaintiffs, the emphasized text requires that an employee who has been terminated "shall be paid" for unused sick leave as an "unpaid benefit earned." Defendant asserts that the termination settlement provision does not plausibly have any bearing on payment for unused sick leave, on three principal grounds. First, defendant reasons that plaintiff's interpretation is inconsistent with the sick leave provision itself, which provides that "[s]ick leave is intended only in the case of personal illness or injury * * *." Second, defendant asserts that sick leave is "earned" only when an employee is sick and takes sick leave. It follows, defendant reasons, that there can be no "earned" but unused sick leave. Third, defendant contends that, as used in the termination settlement provision, "unpaid sick time" is sick time that an employee has taken but for which the employee has not yet been paid. Defendant explains that the provision "unambiguously ensures that [when] * * * an employee has used sick leave, the employee will be paid not only for the days the employee was at work, but also for the days the employee may have missed because he or she was sick."

We disagree with each of the three premises on which defendant's conclusion depends. First, the requirement that "[s]ick leave is intended only in the case of personal

___

The provision regarding vacation time indicates that vacation time "accrues," *i.e.*, accumulates over time as earned. *See Webster's Third New Int'l Dictionary* 13 (unabridged ed 2002) (defining "accrue" as "to be periodically accumulated in the process of time").

illness" addresses when an employee is eligible to *use* sick leave, that is, to take sick leave days. It does not address whether unused sick leave accrues or whether an employee is entitled to be paid for accrued but unused sick leave on termination from employment. The fact that the sick leave provision permits the use of sick leave "only in the case of personal illness" is not necessarily inconsistent with the accrual of unused sick leave.

Second, the policy manual does not define the term "earn," so its common meaning is applicable. To "earn" is "to receive as equitable return for *work done or services rendered* : have accredited to one as remuneration." *Webster's Third New Int'l Dictionary* 714 (unabridged ed 2002) (emphasis added). An employee earns remuneration, such as payment for sick days, by working—not by being sick. In contrast, an employee is "paid" for earned sick days by taking them when sick or, plausibly in the case of termination, by being paid money for any "earned" but unused sick time. Thus, we reject defendant's assertion that the policy manual necessarily requires that an employee earns sick leave by being sick.

Finally, the employees to whom the termination provision applies are entitled to termination pay based on a percentage of their "salary." Salaried employees are paid the same amount on a monthly basis, whether or not they have taken sick leave. An employee who misses work in a month because of illness will be paid his or her same monthly salary. Thus, the notion that the provision relates to sick leave that the employee has taken but for which the employee has not yet been paid, although plausible, does not exclude plaintiffs' interpretation.

Accordingly, we conclude that plaintiffs' interpretation of the termination settlement provision is a plausible one: benefits that have been earned but not used, including unused sick leave, are to be paid to the employee on termination, separately from a termination settlement. That interpretation supports plaintiffs' view that there is such a thing as earned, but unpaid, sick leave for which an employee must be compensated on termination.

Another policy manual provision is plausibly consistent with that interpretation. Also included in the section

regarding termination pay is a provision requiring an employee who receives a termination settlement to execute a release of claims against the employer. The second paragraph of that provision requires the employee's signature on the release and provides that "[i]f the release is not signed within 30 days of going off the payroll for regular remuneration, *including accrued paid leave or accrued vacation*, the termination settlement shall be forfeited." (Emphasis added.) In plaintiffs' view, that paragraph requires an employee to sign the release within 30 days of being paid for accrued leave. Plaintiffs assert that, because sick leave is the only type of leave, other than vacation time, that could "accrue," the emphasized phrase is consistent with the notion that sick leave accrues and that an employee is entitled, on termination, to be paid for accrued sick leave as a part of "regular remuneration."

Defendant responds that the section addresses only the timing for the signing of a release: An employee must sign the form within 30 days of going off the payroll for regular remuneration, which includes the *taking* of leave or vacation that the employee has accrued the right to use. Defendant describes what it says is

> "the obvious circumstance to which this provision applies. If an employee were to be sick at the time of termination, and if he or she were to be eligible for a termination settlement, then the 30 days in which to sign the release would not begin until the employee ceases to be sick or has reached his or her 20-day maximum."

Defendant contends that the provision establishes no right to the payment for unused sick leave, but means simply that an employee who is terminated while ill is entitled to be paid during the period of illness, up to the maximum allowable sick leave of 20 days.

We agree with defendant that the provision concerns the timing of the signature requirement, but we do not consider defendant's interpretation of the reference to "accrued paid leave" to be obvious, or the only plausible one. We agree with plaintiffs that the release provision plausibly requires that accrued paid leave be *paid* before the 30-day period for signing the release begins. Because the paragraph separately

mentions "accrued vacation," we agree with plaintiffs that "accrued paid leave" plausibly refers to sick leave.

Here, there is no evidence in the record of the circumstances underlying the formation of the parties' employment contracts with respect to the question of payment for unused sick leave. *See Yogman*, 325 Or at 363 (the court may consider the circumstances of a contract's formation to determine whether an ambiguity exists). Thus, in determining whether the contract is ambiguous, we are left with only its text in the context of the document as a whole. We conclude that the provisions of the incorporated policy manual are in conflict as to whether an employee is entitled to payment of unused sick leave on termination. On the one hand, the sick leave provision does not refer to accrual, carry-over, or payment, thus, plausibly suggesting that sick leave does not have those attributes. On the other hand, the provisions relating to termination pay plausibly indicate that sick leave is a benefit that is earned and that earned but unused sick leave is paid on termination as an "unpaid benefit earned." Accordingly, when the provisions are read together, the contract is ambiguous. *See Batzer*, 204 Or App at 314-17 (a contractual provision is ambiguous if it is susceptible to more than one reasonable interpretation).

Because the contract is ambiguous, ascertaining its meaning is a question of fact, and the trial court therefore erred in granting defendant's motion for summary judgment. *See Brown*, 167 Or App at 61.[3] For the same reason, the court did not err in denying plaintiffs' motion for summary judgment. On remand, the trier of fact will ascertain the intent of the parties, considering extrinsic evidence of the parties' intent as relevant to explain the ambiguity. *Yogman*, 325 Or at 363-64; ORS 41.740.

---

[3] An exception to that general rule exists when there is no relevant extrinsic evidence to resolve the ambiguity. *See Yogman*, 325 Or at 363-66 (interpreting ambiguous contract term on summary judgment when the parties agreed that there was no relevant extrinsic evidence). In such circumstances, the court can, on summary judgment, determine the contract's meaning by applying appropriate maxims of construction. *Id.* at 364. Here, however, we decline to apply the exception. In their summary judgment submissions, the parties each proffered some extrinsic evidence relating to the disputed issue and, unlike in *Yogman*, they did not agree that there was no other extrinsic evidence that was relevant to the meaning of the contract.

■ We next consider the third and fourth assignments of error, which relate to the trial court's summary judgment rulings on Madson's claim for termination pay. In this instance, the text of the policy manual is dispositive. Section 4118.00 provides, in part:

**"Termination Pay**

"1. Eligibility

"All full-time employees who have been employed at least two years may be granted termination pay, providing the employee is not immediately eligible for benefits from the Retirement plan. The termination pay policy applies to the following:

"a. Employees whose employment is discontinued by nonrenewal of contract or dismissal or who are counseled to resign by the employing organization, and who will not be eligible for benefits from unemployment insurance or Worker's Compensation.

"b. Employees who are not able to continue employment because of medical disability as determined by appropriate medical certification and the controlling denominational committee, and are not eligible for disability retirement benefits or benefits from the Employee Disability Income Plan (*Education Code* 4218).

"c. The surviving spouses or dependent children of employees who have died while in active service, or the surviving dependent parent(s) of unmarried qualifying employees who have died in active service. This assistance is in addition to that which is provided by the Employee Survivor Benefit policy.

"d. Employees who service until or after the age of 65 but who are not eligible for retirement benefits.

"2. Ineligible Employees

"Employees and/or surviving dependents *not eligible* for termination pay are those:

"a. Who voluntarily resign from their employment, or terminate while on a leave of absence or immediately following a leave of absence.

"b. Who are unwilling to accept an appropriate transfer.

"c. Who are eligible for other unemployment benefits as provided by the employer, such as state unemployment insurance."

(Emphasis and boldface in original.) Thus, full-time two-year employees to whom the termination pay policy applies are entitled to termination pay. The termination pay provision applies to qualified employees whose employment is "discontinued by non-renewal." "Non-Renewal of Contract" is defined elsewhere in the policy manual as "[t]he decision by the employing organization not to offer a new contract to a certificated/professional employee and thus discontinue the employee's service at the close of the current contract." The trial court concluded that defendant's offer to Madson of a 10-month contract was *not* a "non-renewal of contract" and that, therefore, Madson was ineligible for termination pay.

Defendant agrees with the trial court's reasoning that Madson's circumstances do not comport with the policy manual's definition of a "non-renewal of contract." Additionally, defendant observes that the policy manual establishes a procedure for the nonrenewal of contracts; defendant asserts that its action toward Madson did not trigger that procedure. Finally, defendant argues that Madson's circumstances do not fit within any of the other criteria described in the policy manual that trigger entitlement to termination pay.

Madson has a different understanding of the termination pay provision, namely, that *all* full-time employees who have been employed for at least two years are eligible for termination pay, unless they have resigned voluntarily. He contends that his resignation was involuntary and, accordingly, that it makes no difference whether his circumstances fit the criteria described in subparagraphs (1)(a) through (1)(d) of the termination pay provision. In support of his position that his resignation was involuntary, Madson relies on a provision in the policy manual requiring that an employee be notified by May 1 of the contract year of an intention not to renew a contract. He contends that, because defendant failed to notify him by May 1, 2002, that it did not intend to renew his previous year's contract, that contract was automatically renewed. He further contends that, when, in June 2002, defendant offered him a 10-month contract with reduced pay

and benefits, defendant repudiated or materially breached the 12-month contract that had been automatically renewed and that, under the terms of the policy manual, he therefore left involuntarily and is entitled to termination pay. Additionally, he contends, his resignation was involuntary because defendant offered him a contract that it knew he would refuse.

■   Madson's arguments are based on several erroneous assumptions. The first is that when, on May 1, 2002, defendant failed to notify him of an intention not to renew his contract, the previous year's contract was automatically renewed. Section 4008:93 of the policy manual provides, in part:

> "1.   Annual employment contracts will be offered by the employer. Before the prospective employee reports for duty, a contract must be signed and returned to the employer in harmony with provisions indicated on the document. Unless otherwise indicated in the document, failure to return the contract within 30 days of issuance indicates that the individual has chosen to decline employment or has voluntarily resigned. Notification by the employer of intent not to renew a contract is to be submitted in writing to the employee by May 1."

Although the policy manual requires notice of intent not to renew a contract, there is no provision for automatic renewal of the previous year's contract. Further, the manual provides for annual contracts and the renewal of contracts, but it does not provide that a renewed contract must be identical to the previous year's contract. The manual defines "nonrenewal" as a decision not to offer a *new contract*. Because Madson had no right to the same contract for the 2002-03 school year that he had for the 2001-02 school year, his 2001-02 contract was not automatically renewed when defendant failed to give him notice of nonrenewal by May 1. It follows that defendant's decision to offer him a 10-month contract was not a repudiation or breach of a previous contract.

We also reject as implausible Madson's interpretation of the policy manual's provisions regarding eligibility for termination pay. Contrary to Madson's view, eligibility is not

conferred on all full-time employees who have worked for defendant for longer than two years. Rather, the manual provides that all two-year employees "may" be eligible for termination pay, if they meet the further criteria listed in Section 4118:00.1a.-d. The only possible basis for Madson's eligibility is that described in subparagraph a., nonrenewal or dismissal. Madson does not contend that he was dismissed, and we already have concluded that his termination was not the result of a nonrenewal, as that term is defined in the manual. Rather, defendant offered Madson a new contract for the 2002-03 school year, and he chose not to accept it. That defendant might have been able to predict Madson's rejection of that offer did not render the rejection involuntary. Accordingly, based on the unambiguous terms of the contract, Madson was not entitled to termination pay. The trial court therefore did not err in granting summary judgment to defendant on Madson's claim for termination pay.

Judgment for defendant on plaintiffs' claims for unused sick leave reversed and remanded; otherwise affirmed.