Argued and submitted August 12, 2010, reversed and remanded August 17, 2011

## GEMSTONE BUILDERS, INC.,
*Plaintiff-Respondent,*

*v.*

## Jeff STUTZ
and Jennifer Stutz,
*Defendants-Appellants.*

Lane County Circuit Court
160825106; A141847

261 P3d 64

George W. Kelly argued the cause and filed the brief for appellants.

Joel DeVore argued the cause for respondent. With him on the brief was Luvaas Cobb.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

**ORTEGA, P. J.**

Defendants appeal the denial of their petition to compel arbitration. ORS 36.730(1)(a). Because we conclude that the contract between plaintiff and defendants requires binding arbitration of their disputes, we reverse and remand.

The facts in the record are few. Plaintiff, a contractor, sued defendants, who had hired plaintiff to build a house for them. Plaintiff asserted claims for breach of contract, unjust enrichment, and fraud.

The contract between plaintiff and defendants includes several provisions that address the resolution of disputes. For ease of reference, we assign numbers to the pertinent paragraphs and letters to certain clauses of the contract, which contains no internal headings. In a paragraph concerning plaintiff's warranty of materials and workmanship (paragraph 1), the contract provides, "In the event of a bona fide dispute as to repair or replacement, the parties shall submit such dispute to arbitration prior to initiation of any suit or other actions at law and under the terms set forth hereinafter." The next paragraph (paragraph 2) includes a provision that defendants "agree[ ] not to file any claims, warranty or otherwise, prior to allowing [plaintiff] the opportunity to correct the defect or resolve the claim." After paragraphs addressing insurance, selection of materials, change orders, and other matters, the contract contains a paragraph (paragraph 3) stating that, if defendants fail to make payments or otherwise fail to comply with the contract terms, "then [plaintiff] shall have the right to declare the entire unpaid balance of the purchase price to be immediately due and payable, and to pursue any remedy afforded [plaintiff] at law or in equity for strict foreclosure." Two paragraphs later, the contract contains this paragraph (paragraph 4):

"[(a)] In case suit, action or arbitration is instituted by either party hereto to enforce any provision hereof, the prevailing party in such suit, action or arbitration shall, in addition to the relief granted, be entitled to an award and judgment for such as the trial and each appellate court may adjudge reasonable in such court as an attorney's fee in such claim for relief, action or other proceeding, and in any appeal thereof. [(b)] Such sum shall include a reasonable

amount as and for costs and attorney's fees to be incurred by the prevailing party in collecting any monetary judgment or decree entered in such claim for relief, action or other proceeding. [(c)] If there is cause for suit, dispute, or action, both parties agree to submit to arbitration under the rules and laws of the State of Oregon prior to entering into the case of suit. [(d)] In any case, the losing party shall bear the entire expense of arbitration for both parties. The decision from arbitration will be binding on both parties."

The parties do not cite any other provisions that bear on the arbitration issue.[1]

After plaintiff filed its complaint, defendants moved to dismiss and petitioned the trial court to order arbitration. Defendants argued that, under the contract, disputes at least had to be submitted to arbitration before the filing of any action and that it was questionable whether any action could be filed at all. In their petition, defendants stated that the contract was drafted by plaintiff, but they offered no evidence on that point. The only evidence that they offered was an affidavit describing their efforts to initiate arbitration and plaintiff's failure to participate. Plaintiff responded that the contract provisions concerning arbitration were irreconcilably contradictory and thus unenforceable. At the hearing on defendants' motion, neither party presented any evidence, although defendants' attorney suggested that "the court could ask for an evidentiary hearing on this." The trial court denied defendants' motion.

Defendants appeal. They contend that the parties agreed to binding arbitration and that, although the contract does not provide much detail about the arbitration, the Oregon Uniform Arbitration Act fills the gaps in the parties' agreement. In defendants' view, paragraph 4 provides for attorney fees if either party files suit, regardless of whether the circuit court is the appropriate forum for trial, but also establishes that the case must be tried before an arbitrator, whose decision is binding. Indeed, defendants contend that, when read in context, the contract unambiguously requires

---

[1] The contract also provides, "It is mutually agreed by all parties that this project will start, progress, and end in a spirit of mutual cooperation and friendship." (Boldface and italics omitted.) That ideal does not appear to have been realized.

arbitration. In the alternative, they argue, the contract is ambiguous.

Plaintiff responds that the arbitration provision is "too indefinite to be enforceable," because it allows for the alternatives of litigation or arbitration but also provides that arbitration is binding. In the alternative, plaintiff proposes that the contract requires arbitration only in limited circumstances—namely, when a dispute arises as to repair or replacement under paragraph 1—and allows all other claims to be pursued through litigation.

The contract is surely not a model of clarity. Nevertheless, we conclude that it unambiguously requires the parties to arbitrate their disputes; the ambiguity lies in whether such arbitration is binding. Contrary to plaintiff's contention, that ambiguity does not render the arbitration provisions unenforceable. Rather, we follow ordinary principles of contract interpretation and, lacking any extrinsic evidence of the parties' intent, we resolve the ambiguity by applying maxims of construction that favor arbitrability.

We begin with the principles governing interpretation of an arbitration provision. Issues concerning the existence of an agreement to arbitrate and whether a controversy is subject to an agreement to arbitrate are for the court to decide. ORS 36.620(2).[2] The court must decide the issues of arbitrability "summarily"—that is, "expeditiously and without a jury," *Greene v. Salomon Smith Barney, Inc.*, 228 Or App 379, 385, 209 P3d 333, *rev den*, 347 Or 348 (2009)—and order arbitration "unless it finds that there is no enforceable agreement to arbitrate," ORS 36.625(1)(b).

To interpret an arbitration clause, we apply ordinary principles of contract interpretation, subject to a presumption in favor of arbitrability. *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or App 137, 146-47, 227 P3d 796 (2010). Thus, we begin by examining the disputed provisions in the

---

[2] ORS 36.620(2) recognizes an exception, ORS 36.625(8), where a petition to compel or stay arbitration raises an issue on which there is a constitutional right to a jury trial. Neither party has raised any such issue in this case.

context of the contract as a whole; if the contract is unambiguous, we construe it as a matter of law. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997).

> "A contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 313, 129 P3d 773, *rev den*, 341 Or 366 (2006). If a contract's provisions are mutually inconsistent regarding a subject, the contract is ambiguous as to that subject, *Alpine Mountain Homes v. Bear Creek Homes*, 202 Or App 390, 398, 122 P3d 111 (2005); *Portland Fire Fighters' Assn. v. City of Portland*, 181 Or App 85, 91, 45 P3d 162, *rev den*, 334 Or 491 (2002), unless the provisions can be reconciled in reading the contract as whole. *See Yogman*, 325 Or at 361."

*Madson v. Oregon Conf. of Seventh-Day Adventists*, 209 Or App 380, 384, 149 P3d 217 (2006). If the contract is ambiguous after an examination of its text in context, we consider extrinsic evidence of the contracting parties' intent. *Yogman*, 325 Or at 363. If the contract remains ambiguous after examination of any extrinsic evidence, we apply appropriate maxims of construction. *Id.* at 364.

Accordingly, we begin with the text of the contract. For ease of discussion, we address plaintiff's proposed construction first. Plaintiff argues that the contract's provisions can be harmonized by reading paragraph 1 to limit the scope of arbitration to disputes about repair or replacement, paragraph 3 to allow plaintiff to pursue its remedies through litigation, and paragraph 4 to address procedural matters only. Plaintiff's construction, however, cannot be squared with the text of the contract.

Neither paragraph 1 nor paragraph 3, when viewed in context of the contract as a whole, defines the scope of claims subject to arbitration. Although paragraph 1 provides for arbitration of disputes over repair or replacement, nothing in paragraph 1 indicates that, contrary to the broad scope of the arbitration provisions of paragraph 4, paragraph 1 identifies the *only* disputes that are subject to arbitration. Nor does paragraph 3 direct that other disputes be litigated; rather, it provides that, if defendants fail to make payments or otherwise breach the contract, plaintiff may "pursue any

remedy afforded [plaintiff] at law or in equity for strict fore-closure." That paragraph addresses the scope of plaintiff's remedies, not the forum for pursuing such remedies; it does not indicate that plaintiff has a right to litigate such claims. *See* ORS 36.695(3) (providing that, subject to provisions regarding punitive damages and attorney fees, "an arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding").

Paragraph 4(c) contains a broad arbitration clause, which provides that the parties agree to arbitration "[i]f there is cause for suit, dispute, or action." That broad arbitration provision makes paragraph 1 somewhat redundant: There is no need to specifically provide for arbitration of disputes about repair or replacement when any dispute must be arbi-trated. Plaintiff's narrower reading of paragraph 4 as addressing only procedural issues, however, cannot be rec-onciled with paragraph 4(c)'s provision that the parties agree to arbitration when "there is cause for suit, dispute, or action." Reading the contract as a whole, it unambiguously requires the parties to arbitrate their disputes.[3]

The contract is ambiguous, however, regarding whether such arbitration is binding or merely a condition precedent to litigation. Two provisions suggest that arbitra-tion is nonbinding. Paragraph 1 provides for submitting war-ranty disputes "to arbitration *prior to* initiation of any suit or other actions at law and under the terms set forth here-inafter." (Emphasis added.) Likewise, paragraph 4(c) pro-vides for arbitration of all disputes "*prior to* entering into the case of suit." (Emphasis added.) Those provisions suggest that arbitration precedes, but does not preclude, the initia-tion of litigation.[4] Paragraph 4(d), however, states that "[t]he

---

[3] The result would be the same even if the contract were ambiguous regarding the scope of arbitrability, because we must resolve any doubts in favor of arbitra-bility. *Industra / Matrix Joint Venture v. Pope & Talbot*, 341 Or 321, 335, 142 P3d 1044 (2006); *Livingston*, 234 Or App at 147.

[4] Paragraph 4(a) provides for attorney fees "[i]n case suit, action or arbitration is instituted by either party hereto to enforce any provision hereof." Reading that provision to allow fees for arbitration or for any litigation to compel arbitration or enforce an arbitration award (that is, litigation to enforce the arbitration provisions of the contract) allows paragraph 4(a) to be reconciled with paragraph 4(c)'s require-ment that the parties arbitrate "[i]f there is cause for suit, dispute, or action."

decision from arbitration will be binding on both parties." Those provisions are inconsistent with each other. *Cf. Woods and Woods*, 207 Or App 452, 463, 142 P3d 1072 (2006) (concluding that a purported waiver of the right to trial *de novo* following court-annexed arbitration was ineffective, because of mutual, material mistake of law: "the parties' expressed intent—that the award be 'binding' but appealable to the Court of Appeals—is, legally, a contradiction in terms"). Where a contract's provisions are inconsistent with each other, in light of the contract as a whole, the contract is ambiguous on the subject of the inconsistent provisions. *Madson*, 209 Or App at 384.

The existence of an ambiguity, however, does not render the contract too indefinite to enforce. Rather, "[a]n agreement is too indefinite to be enforced if, because of uncertainty, the reasonable intention of the parties cannot be ascertained." *Desler v. Twelfth Street Development Corp.*, 115 Or App 549, 552, 839 P2d 266 (1992) (citation omitted). Here, we are able to ascertain the reasonable intention of the parties by following ordinary principles of contract interpretation. Because the disputed provisions, viewed in light of the contract as a whole, are ambiguous, we would consider extrinsic evidence of the parties' intent, *Yogman*, 325 Or at 363, but given that the record contains no such evidence, we turn to appropriate maxims of construction. *Id.* at 364.

Here, we are guided by policies that favor arbitration and the recognition that, in general, arbitration is intended to be an alternative to litigation, not a prolongation of the dispute between the parties. In that regard, we find persuasive the Fourth Circuit's reasoning in *Rainwater v. National Home Ins. Co.*, 944 F2d 190 (4th Cir 1991). There, the parties' agreement called for arbitration under rules that provide for binding arbitration, but also it provided that such proceedings were "a condition precedent to the commencement of any litigation." *Id.* at 191. The court emphasized the federal policy that doubts about the scope of arbitrability must be resolved in favor of arbitration and added:

"[T]hat policy also provides that once an arbitration award is made and the parties agree to entry of judgment then the

award should be confirmed unless it was tainted by corruption, fraud, partiality, misconduct, or an arbitrator exceeded his authority. 9 U.S.C. §§ 9, 10. And we note the presumption that one submits to arbitration, as opposed to mediation, precisely *because of* the binding quality of the process. *See* 2A Michie's *Jurisprudence, Arbitration* § 4, at 28 ('[I]t is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract.'). In sum, we approach the issues on appeal here guided by a congressional policy that favors and encourages arbitration precisely because it is thought to be a speedy, inexpensive and efficient way to *resolve* (as opposed to prolong) disputes without consuming court time."

*Rainwater*, 944 F2d at 192 (emphasis in original). *See also McKee v. Home Buyers Warranty Corp. II*, 45 F3d 981, 985 (5th Cir 1995) (the federal policy favoring arbitration "encompasses an expectation that such procedures will be binding" absent specific contract provisions calling for nonbinding arbitration; a contract provision calling for arbitration to precede litigation was insufficient to require nonbinding arbitration); *Doleac v. Real Estate Professionals, LLC*, 911 So 2d 496, 502-03 (Miss 2005) (collecting similar cases).

A similar policy is reflected in the commentary to the Oregon Uniform Arbitration Act:

"At its core, arbitration is supposed to be an alternative to litigation in a court of law, not a prelude to it. It can be argued that parties unwilling to accept the risk of binding awards because of an inherent mistrust of the process and arbitrators are best off contracting for advisory arbitration or foregoing arbitration entirely and relying instead on traditional litigation."

Uniform Arbitration Act (2000) § 23 Comment B1, 7 Part IA ULA 77, 80 (2009); *see also Livingston*, 234 Or App at 144 (commentary to a uniform act that is enacted by Oregon's legislature is part of the act's legislative history); ORS 36.705 (setting out limited grounds for vacating an arbitration award). That policy in favor of binding resolution is, in this case, the appropriate maxim to resolve the ambiguity in the parties' contract.

Because the contract requires binding arbitration of disputes between the parties, the trial court erred by denying defendants' petition to compel arbitration.

Reversed and remanded.