Argued and submitted May 23, 2013, reversed and remanded April 16, petition for review denied August 7, 2014 (355 Or 879)

ADAIR HOMES, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

DUNN CARNEY ALLEN HIGGINS & TONGUE, LLP,
an Oregon limited liability partnership,
*Defendant-Respondent.*

Multnomah County Circuit Court
101217771; A151203

325 P3d 49

Rick Pope argued the cause for appellant. With him on the briefs was Kirklin Thompson & Pope LLP.

Thomas W. Brown argued the cause for respondent. With him on the brief were Julie A. Smith and Cosgrave Vergeer Kester LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Edmonds, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

This legal malpractice case arises from a law firm's representation of a homebuilder in a case asserting breach of contract to construct a home brought by the home's purchasers. Adair Homes, Inc.,[1] entered into a home construction contract with Paul and Renee Haynes and constructed the home. After the home was built, the Hayneses filed breach of contract, breach of warranty, and other claims against Adair Homes. Dunn Carney Allen Higgins & Tongue, LLP (Dunn Carney), represented Adair Homes in that litigation. After the Hayneses prevailed, they sought attorney fees under a fee provision in the construction contract. The contract also contained an arbitration provision. On behalf of Adair Homes, Dunn Carney disputed the amount, but not the Hayneses' entitlement to attorney fees. The trial court awarded attorney fees to the Hayneses.

Adair Homes then filed a legal malpractice claim against Dunn Carney. It claimed that Dunn Carney negligently failed to assert a viable defense to the attorney fee petition—that the Hayneses failed to comply with the construction contract requirement that they arbitrate the underlying dispute before seeking attorney fees—and that that failure caused it to suffer the damage of paying the attorney fee award.

The parties disagree on the meaning and application of the arbitration clause in the contract. Dunn Carney contends that the provision requires arbitration of "course of construction" disputes under the contract and not the post-construction claims on which the Hayneses prevailed. Adair Homes reads the provision more broadly, as covering all disputes arising from the parties' contractual relationship, including post-construction claims. After the parties filed cross-motions for summary judgment on the application of the arbitration and attorney fee provisions in the contract, the trial court sided with Dunn Carney, concluding that the contract did not require arbitration as a precondition to filing the post-construction claims and then seeking

---

[1] For clarity, we use the names of the parties instead of their designation—plaintiff, defendant—in the legal malpractice case or the underlying breach-of-contract case.

fees for those claims. In light of that construction of the contract, the trial court determined that Dunn Carney's failure to assert an invalid defense caused Adair Homes no harm, and entered judgment in Dunn Carney's favor. Adair Homes appeals.

For the reasons we explain below, we conclude that the contract is ambiguous. Moreover, we conclude that the existence of competing extrinsic evidence about the meaning of the ambiguous contract provisions presents a factual question that makes the meaning of the contract inapposite for resolution on summary judgment. We accordingly reverse the judgment for Dunn Carney and remand the case for further proceedings.

In an appeal from a judgment involving cross-motions for summary judgment, both motions are subject to review if the parties have assigned error to the trial court's rulings on them. We review the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002).

On appeal, the parties generally reiterate the arguments that they made to the trial court. Briefly, each party contends that the contract is unambiguous and requires judgment in its favor as a matter of law. Adair Homes asserts that the trial court erred in construing the contract. It urges us to construe the contract as unambiguously requiring the arbitration of all disputes and to reverse and remand for entry of judgment in its favor. Dunn Carney argues that the trial court correctly construed the contract as unambiguously not applying to the post-construction disputes on which the Hayneses prevailed. Thus, Dunn Carney would have us uphold the judgment of the trial court in its favor.

Alternatively, Dunn Carney contends that, if we conclude that the contract is ambiguous, we should remand for a trial on all disputed issues, including causation, because the parties offered competing extrinsic evidence bearing on the applicability of the arbitration provision. As to that

alternative argument, Adair Homes argues that, if we conclude that the contract is ambiguous, we should not reverse and remand for a trial. Instead, Adair Homes contends that we should apply a presumption in favor of arbitrability and conclude, as a matter of law, that the contract requires arbitration of all disputes and, hence, that it was entitled to summary judgment.

To interpret a contractual arbitration provision, we apply ordinary principles of contract interpretation. *Gemstone Builders, Inc. v. Stutz*, 245 Or App 91, 95, 261 P3d 64 (2011); *see also Industra/Matrix Joint Venture v. Pope & Talbot*, 341 Or 321, 331, 142 P3d 1044 (2006) (stating same principle in context of contract subject to the Federal Arbitration Act). The goal is to determine whether the parties agreed to arbitrate a particular dispute. *Gemstone Builders, Inc.*, 245 Or App at 95; *Industra/Matrix Joint Venture*, 341 Or at 331 ("A party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." (Internal quotation marks and brackets omitted.)); *see also Granite Rock Co. v. International Broth. of Teamsters*, 561 US 287, 299, 130 S Ct 2847, 177 L Ed 2d 567 (2010) ("Arbitration is strictly a matter of consent." (Internal quotation marks omitted.)).

A party is entitled to summary judgment only if the terms of the contract are unambiguous on their face. *Milne v. Milne Construction Co.*, 207 Or App 382, 388, 142 P3d 475, *rev den*, 342 Or 253 (2006). We review for legal error a ruling that a contract is unambiguous. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997); *Arlington Ed. Assn. v. Arlington Sch. Dist. No. 3*, 196 Or App 586, 595, 103 P3d 1138 (2004).

The threshold to show ambiguity is not high. *Milne*, 207 Or App at 388; *Central Oregon Independent Health Serv. v. OMAP*, 211 Or App 520, 529, 156 P3d 97, *rev den*, 343 Or 159 (2007). A contract term is ambiguous if, when examined in the context of the contract as a whole and the circumstances of contract formation, it is susceptible to more than one plausible interpretation. *Id.*; *see also PGF Care Center, Inc. v. Wolfe*, 208 Or App 145, 151, 144 P3d 983 (2006) (a contract provision "is unambiguous only if its meaning is

so clear as to preclude doubt by a reasonable person" (internal quotation marks omitted)). If a contract's provisions are internally inconsistent regarding a subject, then the contract is ambiguous regarding that subject. *Madson v. Oregon Conf. of Seventh-Day Adventists*, 209 Or App 380, 384, 149 P3d 217 (2006).

If a contract is ambiguous, and there is relevant competing extrinsic evidence to resolve the ambiguity, ascertaining the meaning of the contract involves a question of fact and the dispute over the contract's meaning cannot be resolved on summary judgment. *Abercrombie v. Hayden Corp.*, 320 Or 279, 292, 883 P2d 845 (1994); *Dial Temporary Help Service v. DLF Int'l Seeds*, 255 Or App 609, 612, 298 P3d 1234 (2013) ("[I]t is the existence of competing extrinsic evidence—and the triable factual issue that the evidence creates—that, as a general rule, makes the resolution of the meaning of an ambiguous contract on summary judgment inappropriate[.]"); *see also Madson*, 209 Or App at 389, 389 n 3.

To determine whether a contract is ambiguous, we examine the text of the disputed provisions in the context of the document as a whole. *Yogman*, 325 Or at 361; *Milne*, 207 Or App at 389. As we explain below, our examination of this contract as a whole reveals that it can plausibly be read either as requiring arbitration of *all* disputes or as requiring arbitration of *only course-of-construction* disputes. Accordingly, the contract is ambiguous.

The arbitration provision (paragraph 15) and the attorney fee provision (paragraph 16) of the parties' contract provide:

> "**15. DISPUTE RESOLUTION:** The Owner and Adair realize that disagreements may arise in the course of contracting for the construction of a structure which the Parties may be unable to settle between themselves. If this happens, the Parties agree to settle all disagreements in an efficient, timely and fair manner at minimal or no cost. To accomplish this, the Parties agree to the following system of Dispute Resolution, which shall apply to all disagreements arising at any time and in any way relating to construction or to this Contract.

"(a) **Decision by Inspectors:** All work performed and materials provided on the property will be inspected by Government Agencies with jurisdiction and it is agreed that their decisions, within the scope and limits of their training and responsibilities, will be final and binding upon the Parties.

"(b) **Mediation/Arbitration:** If a dispute (or any part of a dispute) is not resolved through the inspection process '(a),' the Parties agree to meet with an unbiased Mediator, with a working knowledge of residential construction, to be named by the Construction Arbitration Services, in an effort to resolve the dispute through mediation. If mediation fails to resolve the dispute, it will immediately proceed to final and binding arbitration with the Mediator serving as the Arbitrator. Should Construction Arbitration Services decline to designate a Mediator/Arbitrator: The Parties shall jointly and promptly select an individual with a working knowledge of residential construction to serve as Arbitrator, to arbitrate the dispute. The arbitrator so selected may attempt to mediate the dispute prior to commencing formal arbitration.

"(c) **Parties, Notice, Binding Effect & Fees:** The parties agree to avoid representation by counsel or others in the dispute resolution process, and to limit participation to themselves. Others with specific knowledge and involvement in the matters of the dispute may be present only upon advance approval of the Mediator/Arbitrator. Any request by the Owner for mediation shall be sent to the President of Adair at 1111 S.W. 170th, Beaverton, Oregon 97006, or personally delivered to the President. Any such notice by Adair shall be sent to the Owner at their address shown on the Product Selection & Binder Receipt, or personally delivered to the Owner. Such arbitration shall be final and binding on the Parties on all matters involving, relating to or arising out of this Contract, or the construction of the structure, including Adair's common law and/or statutory lien rights. Resort to this system of mediation/arbitration is mandatory and time is of the essence. The Parties shall equally share the Mediator/Arbitrator's fees.

"**16. LEGAL PROCEEDINGS, FEES AND COURT COSTS:** In the event that any legal proceeding is brought under this Contract, the prevailing Party shall be entitled to an award of: (a.) Its reasonable attorney fee [*sic*] for pretrial, trial and appellate work on all matters relating to or

arising out of the contract between the Parties, or the construction of the structure; (b.) All costs and expenses reasonably incurred by the Party in the proceeding whether or not awardable as court costs generally; and (c.) Liquidated damages, representing time spent by the Party on the action, which both Parties agree is difficult to quantify, equal to five percent (5%) of the entire Contract price.

"Neither Party may initiate a legal proceeding without prior conformance to Paragraph 15 of this Contract, and without first giving the other Party twenty (20) days advance notice by Certified Mail of the intent to file a legal action. The Party who fails to conform to these requirements and initiates a legal action shall **not** be entitled to any award(s) and shall also be responsible to pay the costs of items (a.) and (b.) above incurred by the other Party. Nothing in this paragraph, however, shall affect any rights to, or determination of, an award of attorney fees pursuant to statutory lien rights. In this paragraph 16, the term 'prevailing party' means the Party in whose favor a net award, judgment or final decision at each level of proceeding enters or is affirmed, irrespective of amount or legal theory."

(Boldface in original.)

Thus, the contract generally provides that attorney fees are to be awarded to a party who prevails in "any legal proceeding * * * brought under" the contract, but conditions the award on "prior conformance to Paragraph 15" and 20 days' advance notice of intent to "file a legal action." Paragraph 15, in turn, establishes a "system of Dispute Resolution" involving mandatory mediation and arbitration of "disagreements" between the parties. The pivotal question here is whether the "disagreements" subject to that system of dispute resolution include all disputes between the parties or only course-of-construction disputes.

The interpretation urged by Adair Homes is plausible. Under Adair Homes's proposed interpretation, the contract requires that *all* disputes be arbitrated and, accordingly, prohibits an award of attorney fees in any litigation commenced by a party who has not previously sought arbitration. Adair Homes points to the text of paragraph 15: its multiple references to "all disagreements"—including one

reference to "all disagreements arising at any time and in any way relating to construction or to this Contract"—and its statement that arbitration "shall be final and binding on the Parties *on all matters involving, relating to or arising out of this Contract, or the construction of the structure*[.]" (Emphasis added.) That wording is inelectably broad and makes plausible Adair Homes's proposed interpretation of the contract.

However, the interpretation urged by Dunn Carney is also plausible. Under Dunn Carney's proposed interpretation, the contract requires arbitration of only "course of contracting" disputes and, accordingly, did not prohibit an award of attorney fees in the underlying litigation here in which the Hayneses prevailed in post-construction disputes. Dunn Carney points out that the first sentence of paragraph 15 observes that "disagreements may arise in the course of contracting for the construction of a structure ***." The second sentence then provides that, if "this"—*i.e.*, disagreements that arise during the course of contracting for the construction of a structure—happens, then the parties will settle their disagreements quickly and efficiently. Finally, the third sentence provides that, to accomplish "this"—*i.e.*, the quick and efficient resolution of disagreements that arise during the course of contracting for the construction of a structure—the parties will use the dispute-resolution procedures outlined in the remainder of the paragraph. Dunn Carney then contends that, under the plain definitions of the words used, "contracting for the construction of a structure" essentially means "building a house." It is possible to read that text of paragraph 15 as Dunn Carney suggests: as indicating that its dispute-resolution procedures are triggered only by disputes that arise after construction on the house has begun but before that construction ends.

The plausibility of Dunn Carney's reading of that text is supported by a review of its context. We find particularly persuasive that the dispute resolution process in paragraph 15 requires the use of a residential-construction expert as mediator or arbitrator. Because course-of-construction disputes would fall within the expertise of a residential-construction expert, it would make sense to have

a residential-construction expert resolve that type of dispute. On the other hand, many of the kinds of disputes, claims, and damages that could result after construction is complete—*e.g.*, those involving personal injury and property loss—would not be within the expertise of a residential-construction expert, and so it seems unlikely that the parties would have agreed to submit such disputes to a residential-construction expert.[2]

In addition, the wording of paragraph 16 can plausibly be read several ways. Dunn Carney suggests that the wording of paragraph 16 indicates that the parties contemplated that at least some disputes could be resolved through litigation. That paragraph provides that, if "any legal proceeding is brought under" the contract, the prevailing party is entitled to reasonable attorney fees for "trial and appellate work * * *." Paragraph 15, on the other hand, provides that any arbitration is to be "final and binding * * *." Read together, in Dunn Carney's view, those provisions suggest that the parties may have contemplated that some disputes could be resolved by final and binding arbitration, but that others could be litigated. Adair Homes, on the other hand, notes that paragraph 16 requires "prior conformance to Paragraph 15" before litigation is initiated. Adair Homes suggests that, read as a whole, the contract allows for attorney fees only in those situations in which a party has first resorted to mediation and arbitration before commencing litigation. That construction is facially plausible; we note, however, that it is difficult to square with that part of paragraph 15 that states that any arbitration is to be "final and binding."

---

[2] We note that an unpublished decision of the Washington Court of Appeals indicates that that court was, for similar reasons, persuaded that an identically worded contract between Adair Homes and other homeowners did not require arbitration of post-construction claims. *Pearson v. Adair Homes, Inc.*, 128 Wash App 1045, 2005 WL 1705784 (2005). In other words, that court found the interpretation urged by Dunn Carney here not only plausible, but convincing. The court reasoned that (1) paragraph 15 was internally inconsistent in first limiting the application of the arbitration provision to construction claims and then broadening its application to every conceivable dispute, making it ambiguous, and (2) reading the arbitration provision as a whole, "the parties did not, and could not, have contemplated covering personal injury claims [like the one at issue] under the arbitration clause where they agreed that someone with construction experience would be selected as an arbitrator." *Id.* at *2-3.

Because each party's proposed interpretation of the contract is plausible, the contract is ambiguous. Furthermore, because the parties offered competing extrinsic evidence bearing on the meaning of the ambiguous contract provisions, ascertaining the contract's meaning in light of that evidence is a question of fact.

According to affidavits of Paul and Renee Haynes, submitted to the trial court on summary judgment by Dunn Carney, they met with an Adair Homes representative, Lawrence Van Horn, before they signed the contract. Van Horn told them that, because the point of paragraph 15 was to keep the project on schedule, its procedures would apply only if a dispute arose during the course of construction. Van Horn mentioned examples of situations that would fall within the scope of paragraph 15, and all were things that might happen during the construction phase. Van Horn further explained that, for all other disputes, paragraph 16 preserved the parties' right to a jury trial. That explanation was important to the Hayneses, and they would not have signed the contract if they had known that Adair Homes would later claim that all disputes were subject to the arbitration provision. In particular, Paul Haynes paid special attention to the types of cases that Van Horn listed as examples of those subject to arbitration because Haynes is a union member and "the words 'mediation' and 'arbitration' raised red flags for me." According to Renee Haynes, her husband

> "asked [Van Horn] which kinds of disputes went to arbitration and which could go to court. [Van Horn] said that the mediation and arbitration section, Article 15, applied to disputes arising during the construction process. He emphasized the wording 'during the course of contracting.' He explained that sometimes things come up during construction that needed to be settled quickly so that the project could stay on schedule. * * * He gave several examples of the kinds of disputes that had been subject to arbitration in the past, all of which occurred during the construction process. * * * Van Horn made specific assurances that paragraph 16 preserved our right to jury trial if we discovered any major problems with the house after it was completed."

Van Horn's affidavit, by contrast, states that he did not make the representations described by the Hayneses,

but instead merely read the contract to them word-for-word without explaining or interpreting any of its provisions. Because that competing evidence creates a question of fact about the meaning of the contract, the contract cannot be construed as a matter of law and summary judgment was inappropriate.

Adair Homes remonstrates that, instead of remanding the case to the trial court for resolution of the meaning of the contract as a factual matter, we should apply a presumption in favor of arbitrability and uphold the trial court's judgment. Applying that presumption to this contract would lead as a matter of law, in Adair Homes's view, to the conclusion that *all claims* related to the contract must be arbitrated and, hence, that it was entitled to summary judgment as a matter of law. In essence, Adair Homes argues that courts should apply the general policy favoring arbitration before considering extrinsic evidence of the parties' intent, with the result that that policy could trump the parties' intention not to submit a particular kind of dispute to arbitration. We reject that argument.

In support of its argument, Adair Homes relies on several cases that, it contends, establish that the policy in favor of arbitration is applied to contracts that are ambiguous as to arbitrability: *Gemstone Builders, Inc.*, 245 Or App 91; *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or App 137, 227 P3d 796 (2010); *Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 126 Or App 523, 869 P2d 369, *rev den*, 319 Or 36 (1994). To be sure, those cases refer to and apply a policy in favor of arbitrability. *Gemstone Builders, Inc.*, 245 Or App at 98-99; *Livingston*, 234 Or App at 147; *Snow Mountain Pine, Ltd.*, 126 Or App at 529. However, none of those cases involved a facially ambiguous contract and competing extrinsic evidence bearing on the ambiguity, and none of them supports deviating from our usual principles of contract interpretation in the context of arbitration provisions, which, as noted above, include the principles that arbitrability is a matter of consent and that the presence of competing extrinsic evidence about the meaning of an ambiguous contractual provision makes summary judgment inappropriate. 262 Or App at 277-79.

*Gemstone Builders, Inc.*, the most recent of those cases, is particularly instructive. There, we indeed applied a policy favoring arbitration, but only to ambiguous contract provisions about which there was no extrinsic evidence of the parties' intent. In that case, the plaintiff, a contractor, sued the defendants, who had hired the plaintiff to build a house for them. The defendants moved to dismiss the complaint, arguing that the parties' contract either required arbitration as a condition precedent to litigation or required binding arbitration. The plaintiff responded that the contract provisions regarding arbitrability were irreconcilably contradictory and thus unenforceable. The trial court denied the defendants' motion to dismiss, and the defendants appealed. 245 Or App at 93-94.

We began our analysis by setting out the principles governing interpretation of an arbitration provision. As pertinent to this case, those principles include the following:

> "To interpret an arbitration clause, we apply ordinary principles of contract interpretation, subject to a presumption in favor of arbitrability. *Livingston*[, 234 Or App at 146-47]. Thus, we begin by examining the disputed provisions in the context of the contract as a whole; if the contract is unambiguous, we construe it as a matter of law. * * *
>
> "* * * * *
>
> "* * * If the contract is ambiguous after an examination of its text in context, *we consider extrinsic evidence of the contracting parties' intent.* * * * If the contract remains ambiguous after examination of any extrinsic evidence, we apply appropriate maxims of construction."

*Id.* at 95-96 (emphasis added); *see also Portland Police Assoc. v. City of Portland*, 248 Or App 109, 113-14, 273 P3d 192 (2012) (applying same methodology to interpretation of collective bargaining agreement). We reviewed the disputed text and the contract as a whole; based on that review, the contract was ambiguous about whether required arbitration was binding or not. *Gemstone Builders, Inc.*, 245 Or App at 98. We then observed that the next step in the analysis would be consideration of any extrinsic evidence of the parties' intent:

"Because the disputed provisions, viewed in light of the contract as a whole, are ambiguous, we would consider extrinsic evidence of the parties' intent, but given that the record contains no such evidence, we turn to appropriate maxims of construction."

*Id.* (citation omitted). Accordingly, it was only because there was no extrinsic evidence of the parties' intent that we reached the level of maxims and were guided by polices that favor arbitration. *Id.*

*Gemstone Builders, Inc.*, illustrates that, in applying our usual principles of contract interpretation to an arbitration provision, we resort to the general policy in favor of arbitration only when a contract is ambiguous *and* there is no extrinsic evidence of the parties' intent. Given that parties may not be required to arbitrate disputes that they did not agree to arbitrate, that approach only makes sense. *See Granite Rock Co.*, 561 US at 299; *Industra/Matrix Joint Venture*, 341 Or at 331; *Gemstone Builders, Inc.*, 245 Or App at 95.

The absence of a discussion of extrinsic evidence in some cases involving the interpretation of arbitration provisions merely reflects the fact that, in those cases, extrinsic evidence had not been offered. *See Granite Rock Co.*, 561 US at 300-03 (rejecting argument urging arbitration on policy grounds where there was no evidence of the parties' agreement to arbitrate the question; stressing general principle that a court should order arbitration only when it is satisfied that the parties agreed to commit the particular dispute to arbitration; observing that the fact that the Court, in some cases, had applied presumption of arbitrability without discussing that general principle meant only that it was obvious in those cases that the principle had been satisfied).

Accordingly, because the contract is ambiguous as to whether it required arbitration of the disputes in which the Hayneses prevailed and because the parties offered competing extrinsic evidence bearing on that issue, summary judgment was inappropriate. We therefore reverse the judgment in favor of Dunn Carney. We remand for further proceedings,

including consideration of the competing extrinsic evidence offered by the parties.

Reversed and remanded.