Argued and submitted November 18, 2014, affirmed April 1, petition for review allowed July 30, 2015 (357 Or 595)

COUCH INVESTMENTS, LLC,
an Oregon limited liability company,
*Plaintiff-Respondent,*

*v.*

Leonard PEVERIERI,
an individual;
Judith Peverieri, an individual;
and Peverieri Investments, LLC,
an Oregon limited liability company,
*Defendant-Appellants.*

Deschutes County Circuit Court
11CV0285SF; A155483

346 P3d 1299

Charlie Ringo argued the cause and filed the briefs for appellants.

Christopher J. Manfredi argued the cause for respondent. On the brief were Gerald A. Martin, Martin E. Hansen, and Francis Hansen & Martin, LLP.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

Leonard and Judith Peverieri and Peverieri Investments, LLC (landlords) appeal a general judgment confirming an arbitration award in favor of Couch Investments, LLC (tenant). Landlords argue that the trial court erred in denying their petition to vacate the arbitration award, because the arbitrator exceeded his powers by issuing rulings that were beyond the scope of the parties' stipulation to arbitrate and limit claims. *See* ORS 36.705(1)(d) ("Upon petition to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if * * * [a]n arbitrator exceeded the arbitrator's powers[.]"). In deciding the issue submitted to him by the parties, the arbitrator ordered remedies, citing as authority the parties' stipulation and ORS 36.695(3) (providing, in part, that "an arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding").

We conclude that, because the parties did not agree, in their stipulation, to "waive" or "vary the effect of" ORS 36.695(3), the arbitrator did not exceed his powers. *See* ORS 36.610(1) (with exceptions not relevant to this case, "a party to an agreement to arbitrate or to an arbitration proceeding may waive, or the parties may vary the effect of, the requirements of ORS 36.600 to 36.740 to the extent permitted by law"). Thus, the trial court did not err when it denied landlords' petition to vacate the arbitration award, granted tenant's petition to enter the award, and entered a general judgment in the form of the arbitration award. Accordingly, we affirm.

The relevant facts are not in dispute. Tenant operated a gas station on landlords' property, pursuant to a long-term lease signed by the parties in 1997. In 2011, landlords filed a complaint seeking tenant's eviction, alleging that tenant was in default because tenant had (1) failed to maintain insurance in tenant's name; (2) allowed unauthorized third parties to occupy the premises; and (3) failed to comply with laws relating to tenant's use of the premises. An exhibit attached to the complaint shows that the laws that

landlords alleged tenant had violated were "DEQ regulations pertaining to the capture of storm water from the area surrounding the fueling stations." Tenant then filed a complaint against landlords, alleging intentional interference with economic relations and breach of contract and seeking related mandatory injunctive relief.

The two cases were consolidated and, before the case reached trial, the parties, through counsel, signed a "STIPULATION TO ARBITRATE AND LIMIT CLAIMS" (parties' stipulation), which stated:

"1. The Parties have agreed to arbitrate the claims raised in the above actions. The Parties have mutually selected William E. Flinn to serve as the arbitrator. The arbitration is scheduled for December 18, 2012.

"2. *The only issue to be resolved through arbitration is whether [tenant], as tenant, or [landlords], as landlord, are liable under the lease that is the subject of the above actions (the 'Lease') for the cost of storm water drainage improvements required by the Oregon Department of Environmental Quality (the 'DEQ Issue').*

"3. The Parties agree that David Cole of the DEQ may testify both through his affidavit and by phone, as well. The Parties disagree whether any other witness can provide relevant testimony on [the] DEQ Issue. The Parties, however, do agree that should the arbitrator allow any testimony to be offered on the DEQ Issue (other than Mr. Cole's testimony), it will only be testimony of the Parties themselves.

"4. Other than the DEQ issue, all claims raised in the Parties' pleadings will be dismissed by the Parties with prejudice.

"5. The prevailing party/parties on the DEQ Issue shall be entitled to recover its/their reasonable attorneys' fees under the terms of the Lease."

(Emphasis added.)

After a hearing, the arbitrator issued a letter opinion dated December 20, 2012, in which he concluded that landlords were "liable for the cost of storm water drainage improvements to the leased premises required by the DEQ."

Tenant submitted a proposed arbitration award to the arbitrator, which stated, in part:

"[Landlords are] liable for all costs associated with storm water drainage improvements required by the Oregon Department of Environmental Quality ('DEQ'), as further described in the Affidavit of David Cole, attached ***. [Landlords] shall complete such improvements to the satisfaction of DEQ on or before [date left blank for the arbitrator to fill in]."

Landlords then submitted an objection to the proposed arbitration award, in which they contended that the proposed award provided relief outside the stipulated agreement between the parties. Landlords contended, among other things, that (1) "the Proposed Award should be changed to reflect that [landlords are] responsible for paying for the improvements necessary to comply with OAR 340-044-0018(3), which is the applicable DEQ regulation regarding the property"; (2) landlords "should not be obligated to make the DEQ Improvements if [landlords are] able to convince the DEQ to accept an alternate plan that sufficiently complies with OAR 340-044-0018(3), or is otherwise acceptable to the DEQ"; (3) "[t]he Proposed Award should also be changed to reflect that [landlords are] responsible for managing and completing the installation of the DEQ Improvements *** [landlords] must retain control of the installation of the DEQ Improvements if [they are] obligated to pay for it"; and (4) landlords "should not be given a deadline in which to complete the DEQ Improvements."

The arbitrator held oral argument on landlords' objections and then issued a letter in which he overruled the objections set forth above. In that letter, the arbitrator stated:

"The first issue to be addressed is the scope of the authority given to the arbitrator by the parties' stipulation and the Uniform Arbitration Act, ORS 36.600 *et seq.* Paragraph (2) of the stipulation provides that '[t]he only issue to be resolved through arbitration is whether [tenant] *** or [landlords] are liable under the lease *** for the cost of storm water drainage improvements required by the [DEQ].'"

(Omissions in original.) The arbitrator continued:

"ORS 36.695(3) says 'an arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the proceeding. The fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under ORS 36.700 or for vacating an award under ORS 36.705.' In my opinion, the stipulation and the cited statutes[1] give me the authority to make the following rulings on [landlords'] objections and, also, to make the findings, conclusions and awards found in the enclosed proposed arbitration award."

After further discussion and another hearing regarding the cost of the required storm drainage improvements, the arbitrator issued an arbitration award, which provided, in part:

"(2) [Landlords are] liable for payment of all costs associated with implementation of the storm water drainage improvements required by the Oregon Department of Environmental Quality ('DEQ') and described in [tenant's] Exhibits * * *. The total amount of all these costs is $32,500.00.

"(3) Within 15 day's from the date of this award, [landlords] will pay $32,500.00 into [tenant attorney's] client trust account. After the payment is complete, the obligation to comply with the DEQ mandate for storm water drainage improvements will shift to [tenant] and the improvements will be completed, without any participation or control by [landlords], no later than September 15, 2013. This obligation shift does not, in any way, change the findings and conclusions found in the arbitrator's December 20, 2012 opinion letter.

"(4) No later than October 15, 2013 or the 30th day after completion of the improvements, which ever date occurs first, [tenant] will refund to [landlords] any of the trust account funds not paid for improvement implementation and will, at the same time, provide [landlords] with an accounting of the funds paid."

Subsequently, tenant filed a petition to enter the arbitration award in court, and landlords filed a petition to vacate the award on the basis that the arbitrator had

---

[1] The arbitrator also cited ORS 36.630(2) as a source of his authority. That statute sets forth the arbitrator's authority to issue provisional remedies; the parties agree that provisional remedies were not at issue in this case.

exceeded his powers. *See* ORS 36.700(1) ("After a party to an arbitration proceeding receives notice of an award, the party may make a petition to the court for an order confirming the award."); ORS 36.705(1)(d) ("Upon petition to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if * * * [a]n arbitrator exceeded the arbitrator's powers[.]"). After a hearing, the trial court issued an order granting tenant's petition to enter the arbitration award and denying landlords' petition to vacate the award, and, without further explanation, entered a general judgment and money award confirming the arbitration award.

Landlords now appeal, assigning error to the trial court's denial of landlords' petition to vacate the arbitration award. As relevant to this case, a "court shall vacate an award made in the arbitration proceeding if * * * [a]n arbitrator exceeded the arbitrator's powers[.]" ORS 36.705(1)(d). We review for legal error the trial court's determination of whether the arbitrator exceeded his powers. *See Seller v. Salem Womens Clinic, Inc.*, 154 Or App 522, 527, 963 P2d 56, *rev den*, 328 Or 40 (1998) (the "extent of an arbitrator's authority" was a "question of law" when determining whether the arbitrator had "exceeded his power or awarded upon a matter not submitted to him" for purposes of *former* ORS 36.355(1)(d) and (f) (1997), *repealed by* Or Laws 2003, ch 598, § 57).[2]

Landlords argue that the arbitrator "went well beyond his authority" when he "determined the cost of the construction work and devised a plan for transferring funds and shifting responsibility for carrying out the work." According to landlords, the arbitrator believed that ORS 36.695(3), which grants arbitrators broad authority to order remedies, "gave him the authority to make rulings that exceeded the express bounds of the written stipulation," and the arbitrator "knowingly and consciously issued rulings that were beyond the scope of the [parties' stipulation]." Landlords contend that "[t]here's no question that

---

[2] In 2003, the Oregon legislature repealed Oregon's then-existing statutes relating to arbitration (*former* ORS 36.300 to 36.365) and adopted the Revised Uniform Arbitration Act (RUAA). Or Laws 2003, ch 598.

the arbitrator acted outside of his authority as set forth in the [parties' stipulation]" and that ORS 36.695(3) "must be interpreted as giving arbitrators authority to issue equitable remedies *within the scope of their authority*" and not as a "license * * * to issue rulings outside the scope of their powers." (Emphasis in original.)

Importantly, landlords do not dispute that the arbitrator's decisions at issue in this case were "remedies" for purposes of ORS 36.695(3). *See Black's Law Dictionary* 1407 (9th ed 2009) (defining "remedy" as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief"). Instead, landlords contend that, when the parties limited the "issue to be resolved" by the arbitrator, they intended to waive any remedies that the arbitrator might otherwise allow under ORS 36.695(3), including the remedies that the arbitrator ordered in this case.

Tenant responds that "[t]he arbitration agreement does not, in any way, preclude the arbitrator from determining the cost of the improvements." Tenant states that, "[u]nless the arbitrator was clearly informed from the outset that he was not empowered to determine the cost of the improvements, doing so in the Arbitration Award was entirely reasonable based on the terms of the parties' arbitration agreement."

As an initial matter, we disagree with landlords' contention that "[t]here's no question that the arbitrator acted outside of his authority as set forth in the [parties' stipulation]." That contention is based on the arbitrator's description of his authority, as set forth below. The arbitrator's rulings on landlords' objections to the proposed arbitration award included the following statement:

> "In my opinion, the stipulation and the cited statutes [including ORS 36.695(3)] give me the authority to make the following rulings on [landlords'] objections and, also, to make the findings, conclusions and awards found in the enclosed proposed arbitration award."

Landlords interpret the arbitrator's statement as an assertion that "Oregon law gave him broad power to exceed his express authority." However, the arbitrator did not state that ORS 36.695(3) gave him the power to "exceed his express

authority"; instead, he expressed that, in his opinion, the authority to make the decisions that he made was derived from the parties' stipulation *together with* ORS 36.695(3). The arbitrator's understanding of his authority was correct.

ORS 36.695(3) provides:

"As to all remedies other than those authorized by subsections (1) and (2) of this section [regarding punitive damages, other exemplary relief, attorney fees, and other reasonable expenses of arbitration], an arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under ORS 36.700 or for vacating an award under ORS 36.705."

That statute, as a default, grants arbitrators broad authority to order remedies. *See* Revised Uniform Arbitration Act (RUAA) § 21, comment 3 (describing that the purpose of the language in RUAA § 21, on which ORS 36.695 is based, was to give arbitrators broad authority to order remedies);[3] *see also Gemstone Builders, Inc. v. Stutz*, 245 Or App 91, 99, 261 P3d 64 (2011) (looking to commentary of the RUAA when discussing policy reflected in the Oregon Uniform Arbitration Act); *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or App 137, 144, 227 P3d 796 (2010) ("A commentary to

---

[3] Section 21(3) of Oregon's 2003 arbitration act, now codified as ORS 36.695(3), was based on, and is nearly identical to, RUAA section 21(c). RUAA § 21, comment 3 provides, in full:

"Section 21(c) *preserves the traditional, broad right of arbitrators to fashion remedies. Generally their authority to structure relief is defined and circumscribed not by legal principle or precedent but by broad concepts of equity and justice.* This is why Section 21(c) allows an arbitrator to order broad relief even that beyond the limits of courts which are circumscribed by principles of law and equity. The language in UAA Section 12(a) [RUAA Section 23(a)] stating that 'the fact that the relief was such that it could not or would not be granted by a court is not ground for vacating or refusing to confirm [an] award' has been moved to this section on remedies. *The purpose of including this language in the UAA was to insure that arbitrators have a great deal of creativity in fashioning remedies; broad remedial discretion is a positive aspect of arbitration.* Just as in UAA Section 12(a), this language in Section 21(c) means that arbitrators issuing remedies will not be confined to limitations under principles of law and equity (unless the law or the parties' agreement specifically confines them)."

(Citations omitted; bracketed material in original; emphases added.)

a uniform act that is enacted by the Oregon legislature is a part of the act's legislative history.").

However, parties wishing to waive, or vary the effect of, an arbitrator's authority to order remedies under ORS 36.695(3) can do so in their agreement to arbitrate. ORS 36.610(1) (with exceptions not relevant to this case, "a party to an agreement to arbitrate or to an arbitration proceeding may waive, or the parties may vary the effect of, the requirements of ORS 36.600 to 36.740 to the extent permitted by law"); *see also* RUAA § 4, comments 1 and 2 (noting that "the RUAA is primarily a default statute" and "Section 4(a) [on which ORS 36.610(1) is based] embodies the notion of party autonomy in shaping their arbitration agreement or arbitration process"); RUAA § 21, comment 2[b][4] (noting that, "[b]ecause Section 21 [on which ORS 36.695 is based] is a waivable provision under Section 4(a) [on which ORS 36.610(1) is based], the parties can agree to limit or eliminate certain remedies 'to the extent permitted by law'").

We know of no Oregon case, since the adoption of the RUAA in 2003, that has addressed the issue of whether an arbitrator, by ordering particular remedies, exceeded the arbitrator's authority. Moreover, decisions involving similar issues prior to 2003 are not useful to our analysis because, unlike the current statutory scheme, the statutes in effect prior to 2003 did not provide, as a default, that an arbitrator had broad authority to order remedies. *See former* ORS 36.300 - 36.365 (2001), *repealed by* Or Laws 2003, ch 598, § 57. Thus, prior to the adoption of the RUAA—and ORS 36.695(3), which provides that an arbitrator may order such remedies as the arbitrator considers "just and appropriate"— when determining whether an arbitrator had the authority to order particular remedies, Oregon courts looked to the specific arbitration agreement to determine whether the agreement gave the arbitrator the authority to grant remedies. *See, e.g., Gamble v. Sukut*, 208 Or 480, 486-88, 302 P2d 553 (1956) ("Article 19 of the arbitration agreement [was] an agreement to submit all differences arising out of the contract, and [was] broad enough to include damages for

---

[4] There are two comments to section 21 of the RUAA that are labeled comment "2." For clarity, we refer to the second of those comments as "comment 2[b]."

breaches of the contract."); *Russell v. Kerley*, 159 Or App 647, 651-52, 978 P2d 446, *rev den*, 329 Or 357 (1999) (arbitrator authorized to award punitive damages when the agreement granted the arbitrator authority to decide "all claims," and did not specifically authorize or exclude punitive damages).

Based on similar reasoning, landlords essentially argue that any decision about remedies qualifies as an additional "issue" that must be properly submitted to the arbitrator in the parties' agreement to arbitrate, and that the parties' limitation of the "issue to be resolved" in this case should be interpreted as a limit on remedies as well. Landlords' argument is not well taken. As discussed above, ORS 36.695(3) now creates a default rule in which arbitrators have broad authority to "order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding." Thus, under the current statutory scheme, our task is not to determine whether the parties specifically authorized the arbitrator to order remedies as part of his resolution of the issue submitted, but whether the parties intended to waive, or vary the effect of, the arbitrator's otherwise broad authority to order remedies under ORS 36.695(3).

To answer that question, we must look to the parties' stipulation. When interpreting an agreement to arbitrate, "we apply ordinary principles of contract interpretation, subject to a presumption in favor of arbitrability." *Gemstone Builders*, 245 Or App at 95 (citing *Livingston*, 234 Or App at 146-47). First, "we begin by examining the disputed provisions in the context of the contract as a whole; if the contract is unambiguous, we construe it as a matter of law." *Id.* at 95-96 (citing *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997)). "'A contract is ambiguous if it is susceptible to more than one reasonable interpretation.'" *Id.* at 96 (quoting *Madson v. Oregon Conf. of Seventh-Day Adventists*, 209 Or App 380, 384, 149 P3d 217 (2006)). Second, "[i]f the contract is ambiguous after an examination of its text in context, we consider extrinsic evidence of the contracting parties' intent." *Id.* (citing *Yogman*, 325 Or at 363). Third, "[i]f the contract remains ambiguous after examination of any extrinsic evidence, we apply appropriate maxims of construction." *Id.* (citing *Yogman*, 325 Or at 364).

As noted, the disputed provision states:

"The only issue to be resolved through arbitration is whether [tenant], as tenant, or [landlords], as landlord, are liable under the lease that is the subject of the above actions (the 'Lease') for the cost of storm water drainage improvements required by the Oregon Department of Environmental Quality (the 'DEQ Issue')."

The parties specified that the "issue to be resolved" by the arbitrator was whether tenant or landlords were liable under the lease for the cost of the required storm water drainage improvements. The parties did not explicitly agree, in their stipulation, to "waive" or "vary the effect" of the arbitrator's authority to "order such remedies as the arbitrator consider[ed] just and appropriate under the circumstances of the arbitration proceeding." ORS 36.695(3). Furthermore, there is no indication in the stipulation that they intended to do so. Thus, we conclude, as a matter of law, that the provision of the parties' stipulation specifying the "issue to be resolved," in the context of the stipulation as a whole, does not indicate an intent to waive or vary the effect of the arbitrator's broad statutory authority to "order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding." ORS 36.695(3).

The arbitrator concluded that landlords were liable under the lease for the cost of the storm water drainage improvements. The arbitrator's decisions regarding the amount of money to be paid, the method of payment, the shifting of the responsibility to tenant to have the work completed, and the time frame in which to do so, were ordered by the arbitrator to enforce his decision that landlords were liable for the cost of the required storm drain improvements. Those remedies were within the "arbitrator's powers," ORS 36.705(1)(d), as derived from the parties' stipulation and ORS 36.695(3)[5] and, accordingly, the trial court did not err when it denied landlords' motion to vacate the arbitration award, granted tenant's motion to enter the arbitration

[5] Landlords do not contend that the remedies the arbitrator ordered exceeded the scope of an arbitrator's inherent remedial authority under ORS 36.695(3). Accordingly, we need not explore the general scope of the arbitrator's authority under that statute.

award, and entered a general judgment in the form of the arbitration award.

Affirmed.