No. 23 April 21, 2016 125

IN THE SUPREME COURT OF THE
STATE OF OREGON

COUCH INVESTMENTS, LLC,
an Oregon limited liability company,
*Respondent on Review,*

*v.*

Leonard PEVERIERI,
an individual;
Judith Peverieri, an individual;
and Peverieri Investments, LLC,
an Oregon limited liability company,
*Petitioners on Review.*

(CC 11CV0285SF; CA A155483; SC S063209)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 14, 2016.

Charles A. Ringo, Bend, argued the cause and filed the brief for the petitioners on review.

Martin E. Hansen, Francis Hansen & Martin, LLP, Bend, argued the cause and filed the brief for the respondent on review. With him on the brief was Christopher J. Manfredi.

Phil Goldsmith, Law Office of Phil Goldsmith, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
* Appeal from Deschutes County Circuit Court, Michael Adler, Judge. 270 Or App 233, 346 P3d 1299 (2015).

**WALTERS, J.**

Leonard and Judith Peverieri and Peverieri Investments, LLC (landlords) appeal from the trial court's general judgment confirming an arbitration award in favor of Couch Investments, LLC (tenant). Landlords argue that the arbitrator exceeded his powers when he found not only that landlords were liable for the cost of storm water drainage improvements required by the Department of Environmental Quality (DEQ), but also ordered remedies. Landlords contend that the trial court erred in denying their petition to vacate the arbitration award under ORS 36.705(1)(d),[1] and that the Court of Appeals erred in affirming the trial court's judgment. *Couch Investments, LLC v. Peverieri*, 270 Or App 233, 346 P3d 1299 (2015). Although our analysis differs from that of the Court of Appeals, we affirm its decision.

The following facts are uncontested. Tenant operated a gas station on landlords' property. Landlords filed a complaint seeking tenant's eviction, alleging, among other things, that tenant was in default because tenant had failed to comply with "DEQ regulations pertaining to the capture of storm water from the area surrounding the fueling stations." Tenant then filed a complaint against landlords, alleging intentional interference with economic relations and breach of the lease agreement and seeking injunctive relief. The two cases were consolidated and the parties signed a "stipulation to arbitrate and limit claims" (stipulation). The stipulation provided:

"1.   The Parties have agreed to arbitrate the claims raised in the above actions. The Parties have mutually selected William E. Flinn to serve as the arbitrator. The arbitration is scheduled for December 18, 2012.

"2.   The only issue to be resolved through arbitration is whether [tenant], as tenant, or [landlords], as landlord, are liable under the lease that is the subject of the above actions (the 'Lease') for the cost of storm water drainage

---

[1] ORS 36.705(1)(d) provides: "Upon petition to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if *** [a]n arbitrator exceeded the arbitrator's powers."

improvements required by the Oregon Department of Environmental Quality (the 'DEQ Issue').

"3.   The Parties agree that David Cole of the DEQ may testify both through his affidavit and by phone, as well. The Parties disagree whether any other witness can provide relevant testimony on [the] DEQ Issue. The Parties, however, do agree that should the arbitrator allow any testimony to be offered on the DEQ Issue (other than Mr. Cole's testimony), it will only be testimony of the Parties themselves.

"4.   Other than the DEQ issue, all claims raised in the Parties' pleadings will be dismissed by the Parties with prejudice.

"5.   The prevailing party/parties on the DEQ Issue shall be entitled to recover its/their reasonable attorneys' fees under the terms of the Lease."

After a hearing, the arbitrator issued a letter opinion concluding that landlords were "liable for the cost of storm water drainage improvements to the leased premises required by the DEQ." Tenant then submitted a proposed arbitration award, which stated, in part: "[Landlords are] liable for all costs associated with storm water drainage improvements ***. [Landlords] shall complete such improvements to the satisfaction of DEQ on or before [date left blank for the arbitrator to fill in]." Landlords submitted an objection to the proposed award, contending that the proposed award sought relief outside the stipulated agreement.

After hearing oral argument on landlords' objections, the arbitrator issued a letter overruling the objections. In the letter, the arbitrator addressed the scope of the authority given to him by the parties' stipulation and Oregon law. The arbitrator stated:

"ORS 36.695(3) says 'an arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the proceeding. The fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under ORS 36.700 or for vacating an award under ORS 36.705.' In my opinion, the stipulation and the cited statutes give me the authority to make the following rulings on [landlords'] objections and, also, to make the findings, conclusions and awards found in the enclosed proposed arbitration award."

After a hearing regarding the cost of the required storm water drainage improvements, at which both sides presented additional evidence, the arbitrator issued an arbitration award. The arbitrator ordered that landlords pay $32,500 into tenant attorney's client trust account and that tenant complete the necessary improvements and refund any excess funds to landlords with an accounting.

Tenant then filed a petition to enter the arbitration award in the circuit court, and landlords filed a petition to vacate the award on the basis that the arbitrator had exceeded his powers. The circuit court granted tenant's petition, denied landlords' petition, and entered a general judgment and money award confirming the arbitration award. Landlords appealed to the Court of Appeals. That court noted that ORS 36.695(3) gives arbitrators broad authority to order remedies unless the parties waive or vary that authority in accordance with ORS 36.610(1). Looking to the parties' stipulation to arbitrate, the court concluded that because the parties had not explicitly agreed to "waive" or "vary the effect of" ORS 36.695(3), and because there was no indication that the parties had intended to do so, the arbitrator did not exceed his powers. *Couch Investments, LLC*, 270 Or App at 235. Therefore, the court affirmed the trial court's judgment. *Id*.

Before this court, landlords assert that the trial court erred in upholding the arbitrator's award because the parties had agreed to limit the arbitrator's authority to a determination of which party is liable for the costs of the improvements required by the DEQ. Landlords argue that the parties had not agreed to submit an entire claim to arbitration. Instead, they had agreed to submit only the limited issue of liability, and the arbitrator exceeded his powers when he went further and ordered remedies.

Tenant responds that arbitrators have broad authority to order remedies under ORS 36.695(3), which provides in part:

"[A]n arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that such a remedy could not or would not be granted by the court is not a

ground for refusing to confirm an award under ORS 36.700 or for vacating an award under ORS 36.705."

Furthermore, tenant argues, in accordance with ORS 36.610(1), parties may limit an arbitrator's power to order remedies only by waiving the operation of ORS 36.695(3) or varying its effect. ORS 36.610(1) provides:

"Except as otherwise provided in this section, a party to an agreement to arbitrate or to an arbitration proceeding may waive, or the parties may vary the effect of, the requirements of ORS 36.600 to 36.740 to the extent permitted by law."

In this case, tenant contends, the parties did not waive or vary the arbitrator's default authority to order remedies; the stipulation to arbitrate contains no express invocation of ORS 36.610(1), and a waiver cannot be implied from its wording.

We begin our analysis with ORS 36.705(1), which grants a court authority to vacate an arbitrator's award in specified circumstances. One such circumstance is "if *** [a]n arbitrator exceeded the arbitrator's powers." ORS 36.705(1)(d). In this case, as noted, the arbitrator determined that he had authority to order remedies, and the trial court agreed.

The starting point in considering the extent of an arbitrator's powers is whether the parties agreed to arbitrate and, if so, the contours of the dispute that they agreed to arbitrate. ORS 36.620(2) provides that "the court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." Thus, landlords are correct that, before a court considers an arbitrator's authority to order remedies under ORS 36.695(3), the court first must determine whether the parties' controversy is subject to an agreement to arbitrate.

As the text of ORS 36.620(2) indicates, whether a particular controversy is subject to an agreement to arbitrate is a matter for the court. ORS 36.620(2) codifies section 6(b) of the Revised Uniform Arbitration Act. Or Laws 2003, ch 598, § 6(2); *see Snider v. Production Chemical Manufacturing, Inc.*, 348 Or 257, 261, 230 P3d 1 (2010)

(noting that ORS 36.730 codifies section 28 of Revised Uniform Arbitration Act). Comment 2 to section 6 of the Revised Uniform Arbitration Act confirms that a court is to decide whether a dispute is encompassed by an agreement to arbitrate:

> "Subsections (b) and (c) of Section 6 are intended to incorporate the holdings of the vast majority of state courts and the law that has developed under the FAA that, in the absence of an agreement to the contrary, issues of substantive arbitrability, *i.e.*, whether a dispute is encompassed by an agreement to arbitrate, are for a court to decide."

*See Datt v. Hill*, 347 Or 672, 682, 227 P3d 714 (2010) (looking to commentary to uniform act to determine legislative intent).

Although this court has not considered how to interpret an agreement to arbitrate and issues of substantive arbitrability under Oregon's arbitration statutes, it has considered those issues under the Federal Arbitration Act (FAA). In *Industra/Matrix Joint Venture v. Pope & Talbot*, 341 Or 321, 331, 142 P3d 1044 (2006), the court explained that "a court, in construing a valid arbitration agreement within the coverage of the FAA, applies ordinary principles of state contract law to determine whether the parties have agreed to arbitrate a particular dispute." We see no reason why ordinary contract principles should not apply in interpreting arbitration agreements in the context of Oregon arbitration law. Therefore, in construing a valid arbitration agreement in that context, a court should apply ordinary principles of state contract law. *See Gamble et ux v. Sukut*, 208 Or 480, 488, 302 P2d 553 (1956) (applying principles of state contract law to arbitration agreement).

In doing so, however, a court must be alert to a distinction described in *First Options of Chicago, Inc. v. Kaplan*, 514 US 938, 115 S Ct 1920, 131 L Ed 2d 985 (1995), a case cited in *Industra/Matrix Joint Venture*, 341 Or at 331-32. In *First Options of Chicago, Inc.*, the United States Supreme Court described the role that an arbitrator's decision may play when the parties dispute the scope of an arbitration agreement. 514 US at 941. The Court distinguished between cases in which the parties agree to arbitrate the question of

whether a particular controversy is arbitrable and cases in which the parties leave that issue to the courts. *Id*. at 943. In the former instance, courts "give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *Id*. In the latter, "the court should decide [the question of substantive arbitrability] just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *Id*.

In this case, neither party argues that they agreed to submit the issue of substantive arbitrability to the arbitrator, and nothing in the stipulation to arbitrate indicates that intent. Therefore, ordinary principles of state contract law govern, without any heightened deference to the arbitrator.

Oregon contract principles require that a court look to the text and context of the parties' agreement to determine the parties' intent. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). The first inquiry that a court makes is whether the agreement is ambiguous. *Evenson Masonry, Inc. v. Eldred*, 273 Or 770, 772, 543 P2d 663 (1975). "In the absence of an ambiguity, the court construes the words of a contract as a matter of law." *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995).

Applying those principles here, landlords argue that the parties' agreement to arbitrate is unambiguous and, as a matter of law, must be interpreted as submitting only the limited issue of liability to the arbitrator. Landlords call our attention to two words in the stipulation—"only" and "issue." As noted, the stipulation provides that "the only issue to be resolved through arbitration is whether [tenant], as tenant, or [landlords], as landlord, are liable under the lease that is the subject of the above actions." Landlords contend that the word "only" indicates that the parties intended to limit the arbitrator's authority to a single legal issue—liability. Landlords contend that the word "issue" indicates that the parties did not intend to submit an entire claim to the arbitrator, but only one aspect of a claim—the "issue" of liability; the parties did not intend to arbitrate the separate "issue" of damages or remedies. Furthermore, landlords contend, the parties agreed to dismiss "all claims" "[o]ther than the DEQ issue" with prejudice, leaving no claim for decision by the

arbitrator and foreclosing the arbitrator's authority to order remedies.

Landlords also make an alternative argument. They argue that, even if the stipulation to arbitrate is ambiguous, its wording and the evidence at the hearing before the trial court indicate that the parties intended to arbitrate only the narrow issue of liability and intended to waive or vary the arbitrator's authority to order remedies.

Tenant's primary argument, like landlords', is that the parties' stipulation is unambiguous. Tenant contends that the terms of the stipulation can only be understood as submitting an entire claim to the arbitrator for resolution—tenant's claim that landlords are liable for the cost of storm water drainage improvements required by the DEQ. In response to landlords' arguments, tenant contends that the words "only" and "issue" were used to describe the single claim that the parties intended to submit for arbitration and to make clear that the parties had not agreed to submit other claims that had been pleaded in the parties' original complaints, such as landlords' claim for eviction or tenant's claim for intentional interference with economic relations. When an arbitrator has authority to decide a claim, tenant contends, that authority includes the authority to order remedies.

Tenant's alternative argument is that, if the parties' stipulation is ambiguous, we should resolve that ambiguity in favor of arbitration. Tenant contends that ORS 36.695(3) gives the arbitrator authority to order remedies, and we should not infer an intent to waive or vary that authority under ORS 36.610(1).

The parties' differences demonstrate the importance of the starting point in an analysis of substantive arbitrability. ORS 36.620(2) requires a court to decide whether a controversy is subject to an agreement to arbitrate. The fact that parties have agreed to arbitrate a dispute does not necessarily mean that the arbitrator may order remedies, triggering ORS 36.695(3). As noted, ORS 36.695(3) provides that arbitrators have broad authority to order remedies "appropriate under the circumstances of the arbitration proceeding."

Parties to an arbitration agreement may describe the dispute that they agree to submit to arbitration in a way that clearly indicates that an award of remedies is not appropriate. As a simplistic example, imagine a negligence case in which the plaintiff contends that the traffic light was red, and the defendant that it was green. If those parties were to agree to arbitrate only that single factual question, a court could decide the nature of the controversy subject to the agreement to arbitrate without considering the default rule in ORS 36.695(3) allowing the arbitrator to determine remedies, or whether the parties had waived or varied that rule pursuant to ORS 36.610(1). If, however, the parties agreed to submit the plaintiff's negligence claim to the arbitrator, ORS 36.695(3) would grant the arbitrator authority to order remedies, unless the parties waived or varied the effect of that provision in accordance with ORS 36.610(1). In some circumstances, the controversy submitted to arbitration will be described in such a way that the scope of the arbitrator's authority is clear without reference to ORS 36.610(1) or ORS 36.695(3).

In this case, however, the parties' stipulation is susceptible to more than one reasonable interpretation and is, therefore, ambiguous. *See, e.g.*, *St. Paul Fire v. McCormick & Baxter Creosoting*, 324 Or 184, 216, 923 P2d 1200 (1996) (concluding contract provision susceptible to more than one reasonable interpretation is ambiguous). The controversy that the parties agreed to arbitrate may have been limited, as landlords argue, to a determination of a single question—which party is responsible for the costs of storm water drainage improvements—or it may have included resolution of a broader claim permitting the arbitrator to order remedies unless the parties waived or varied that authority.

Because the stipulation to arbitrate is facially ambiguous, its meaning was a question of fact, and the trial court was entitled to consider extrinsic evidence to determine the parties' intent. *Evenson Masonry, Inc.*, 273 Or at 772. The parties submitted such evidence to the trial court, including affidavits and supporting documents, and argued that the court should consider those facts in interpreting the stipulation. Although the court did not specify the basis for its decision denying landlords' motion to vacate the

arbitrator's award, landlords did not request special findings of fact and conclusions of law under ORCP 62 A, and the court was not required to explain the basis for its decision. Had landlords made a timely request under ORCP 62 A, the court would have been required to explain whether it concluded that the stipulation to arbitrate was ambiguous and therefore considered the evidence presented by the parties, and, if so, the factual determinations that it made. Because landlords made no such request, we presume that the trial court considered the extrinsic evidence presented and decided the facts in a manner consistent with the ultimate legal conclusion that it reached—that the arbitrator did not exceed the scope of his authority. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (post-conviction court presumed to have decided facts in manner consistent with legal conclusion that admission was voluntary).

We review the trial court's findings to determine whether there is any evidence to support them. *Evenson Masonry, Inc.*, 273 Or at 772. Landlords do not contend that the evidence adduced in the trial court was legally insufficient, and for good reason. The evidence that tenant submitted included evidence from which the trial court could find that parties intended to submit the entire DEQ claim to the arbitrator and that the parties did not intend to waive the arbitrator's statutory authority to order remedies. That evidence is sufficient to support the trial court's conclusion that the arbitrator acted within his authority in ordering remedies.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.