Argued and submitted December 22, 2022, affirmed August 16, 2023, petition for review denied January 12, 2024  (371 Or 825)

James WOLFSTON,
an individual,
and Calaveras II, LLC,
an Oregon limited liability company,
*Plaintiffs-Appellants,*

*v.*

EASTSIDE BEND, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

EASTSIDE BEND, LLC,
an Oregon limited liability company,
and Darrin Kelleher, an individual,
*Petitioners-Respondents,*

*v.*

James WOLFSTON,
an individual,
and Calaveras II, LLC,
an Oregon limited liability company,
*Respondents-Appellants.*

Deschutes County Circuit Court
19CV54546; A177019

536 P3d 1

Plaintiffs James Wolfston and Calaveras II, LLC (Calaveras) appeal from a general judgment in favor of defendants Eastside Bend, LLC (Eastside) and Darrin Kelleher that was entered after the trial court denied plaintiffs' petition to vacate an arbitration award in favor of defendants and, instead, confirmed the arbitration award. In two assignments of error, plaintiffs contend that the trial court erred in denying their petition to vacate the arbitration award under ORS 36.705(1)(a). They maintain that the trial court was required to vacate the award after defendants purportedly engaged in fraud or other undue means during the arbitration proceeding by both withholding production of relevant and ordered discovery and then falsely testifying at the arbitration in a manner inconsistent with the withheld discovery. *Held*: The trial court was not required to vacate the arbitration award. On this record, the trial court could reasonably determine that plaintiffs had not proved that defendants had possession or control of the relevant records when the discovery order and discovery requests were issued during the arbitration proceeding. The trial court could also reasonably determine that plaintiffs had not proved that defendants fraudulently testified. Finally, plaintiffs did not prove that any fraud or undue means, assuming for

the moment that there were any, procured the arbitration award. The trial court considered plaintiffs' evidence before expressly finding that plaintiffs had not met their burden to show causation.

Affirmed.

Walter Randolph Miller, Jr., Judge.

Michael W. Peterkin argued the cause for appellants. Also on the briefs were Peterkin Burgess and Janet M. Schroer and Hart Wagner.

Christopher J. Manfredi argued the cause for respondents. Also on the brief were Martin E. Hansen and Francis Hansen & Martin LLP.

Before Shorr, Presiding Judge, and Lagesen, Chief Judge, and Mooney, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Plaintiffs James Wolfston and Calaveras II, LLC (Calaveras) appeal from a general judgment in favor of defendants Eastside Bend, LLC (Eastside) and Darrin Kelleher[1] that was entered after the trial court denied plaintiffs' petition to vacate an arbitration award in favor of defendants and, instead, confirmed the arbitration award. In two assignments of error, which plaintiffs combine in one argument, plaintiffs contend that the trial court erred in denying their petition to vacate the arbitration award under ORS 36.705(1)(a). They maintain that the trial court was required to vacate the award after defendants purportedly engaged in fraud or other undue means during the arbitration proceeding by both withholding production of relevant and ordered discovery and then falsely testifying at the arbitration in a manner inconsistent with the withheld discovery. For the reasons briefly discussed below, we conclude that the trial court was not required to vacate the arbitration award. The trial court did not err when it concluded that the implications of the newly discovered evidence were ambiguous and that the arbitration decision was not procured by fraud or other undue means. We therefore affirm.

We summarize the material facts. Defendant Eastside is a real estate development company wholly owned by Gary Miller. Eastside owned a platted subdivision in Bend, Oregon with 76 lots and initially intended to develop townhomes on the lots. However, Eastside executed a real estate sale agreement selling the undeveloped property to another company, Canterra. Eastside later approved the assignment of that sale agreement to plaintiff Wolfston.

The sale agreement contemplated the purchase occurring in three phases and required Wolfston to make closing payments at each phase of the development as he

---

[1] We collectively refer to Eastside and Kelleher as "defendants" for ease of reference. Strictly speaking, plaintiffs only sued defendant Eastside in the Deschutes County Circuit Court. The case, however, was stayed pending resolution of plaintiffs' identical arbitration claim against Eastside. Plaintiffs later brought a separate arbitration claim against Kelleher, which was consolidated with the original arbitration. Both Eastside and Kelleher are listed as judgment creditors in the general judgment for the amount of their costs and attorney fees expended in prevailing as respondents in the underlying arbitration matter.

purchased different groups of lots within the subdivision. Eastside's owner Miller provided Wolfston with several extensions to the closing dates during the first two phases in exchange for additional deposits into escrow or additional fee payments. The parties completed the closings on the first two phases of the development.

As the closing date for the third and final phase approached, Wolfston had issues obtaining a loan to fund the completion of that phase before the agreed upon closing date of August 24, 2019. He again sought an extension on the closing date from Miller. Miller either failed to respond or, after the phase three closing date, rejected the extension requests. Ultimately, Wolfston did not secure funding to close on phase three and did not purchase the 23 lots allocated to that phase.

Plaintiffs Wolfston and Calaveras then brought four arbitration claims against Eastside for failing to deliver the 23 phase three lots. Those claims essentially alleged a breach of contract and sought either specific performance or damages, or, in the alternative, a claim for unjust enrichment. The arbitrators rejected each of those claims, rejecting many of them because it concluded that the failure to close was due to Wolfston's inability to get a loan or make the necessary payment before the phase three closing date.

Plaintiffs also brought an arbitration claim against Eastside's real estate agent, Kelleher, claiming that Kelleher interfered with plaintiffs' business relations with Eastside for Kelleher's own personal gain. That claim essentially alleged that Kelleher was not acting as an honest real estate broker at the time of the sale of the development. It alleged that Kelleher had sabotaged the closing of phase three because he wanted to construct buildings on the phase three lots for his own benefit in his capacity as a builder through his construction company, Franklin Brothers. Plaintiffs alleged that, after the failed closing on phase three, Kelleher and Franklin Brothers became the builder of the units and Franklin Brothers was listed as the contractor of record at the design review stage of the development.

Kelleher testified at the arbitration hearing in July 2020 that, while he worked as both a real estate agent and contractor during his career, he was only interested

in obtaining the real estate commission at the time of the failed closing and did not want to build the townhomes on the phase three lots at that time. He testified that he had "[n]o agreement" with Miller to build townhomes on the phase three lots. He also testified at the arbitration hearing that "there's no truth to me being involved in those 23 [phase three] lots or *** intending to build or contract to build on those lots." Miller similarly testified on that date that Kelleher had no involvement in applying for the building permits and that Miller had no agreement "with Kelleher or Franklin Brothers that they will build the 23 lots." Miller had also testified earlier in a deposition before the arbitration that Kelleher did not have "any *** involvement with [the property] at any time after August 24th of 2019," the date of the failed closing.

The arbitration panel issued its decision on October 7, 2020, rejecting all of plaintiffs' claims. That included plaintiffs' claims against Kelleher for his alleged intentional interference with plaintiffs' contractual relationship with Eastside. Among other things, the arbitration panel concluded that, at the time of the failed late August 2019 closing, Kelleher "did not have a *present* interest in the project, and that his company was not the contractor for the construction of the townhomes on the remaining 23 lots." (Emphasis added.) The panel also stated that "Kelleher presented credible testimony that he was not the contractor on the project after Phase III did not close."

In early January 2021, after the arbitration decision, a contractor for Wolfston was looking at a new online construction permit portal that the City of Bend had created. He discovered that, according to the online portal, Kelleher's company, Franklin Brothers, was listed as the contractor for the 23 phase three lots in building permit applications filed on September 8, 2019, a few weeks after the failed closing date. Plaintiffs then asked the arbitration panel for a new hearing on the grounds of "fraud, newly discovered evidence and contempt of discovery order." They maintained that Kelleher and Miller had (1) failed to produce requested and ordered discovery and then (2) falsely claimed at the arbitration hearing that Kelleher was not the contractor on

the phase three lots after Wolfston failed to timely close on that phase. They contended that the newly discovered information demonstrated that "Kelleher/Franklin Brothers was the general contractor for the project likely before and certainly after [the] August 24, 2019" phase three closing date.

For their part, Kelleher and Miller noted that the purported new evidence was in fact from a third party, the City of Bend, and was therefore not controlled by defendants or inaccessible to plaintiffs. They noted that Miller, and not Kelleher or Franklin Brothers, had paid for the building permits. They also argued that plaintiffs themselves had presented evidence during the arbitration proceeding that Eastside and Franklin Brothers were working together on building out the 23 lots in October 2019, which meant that the purported "new" evidence was not a particular surprise. The arbitration panel then rejected plaintiffs' request for a new hearing, simply concluding that "[t]he motion is denied."

Plaintiffs then petitioned to vacate the arbitration award in the circuit court pursuant to ORS 36.705(1)(a), which provides that "the court shall vacate an award made in the arbitration proceeding if * * * [t]he award was procured by corruption, fraud or other undue means." We understand that statute to require the trial court to vacate an arbitration award when both (1) the prevailing party in arbitration engaged in fraud or other undue means and (2) that fraud or other undue means procured the arbitration award.

Plaintiffs contended, much as they had previously argued to the arbitration panel in seeking a new hearing, that defendants obtained the arbitration award by their fraudulent testimony and by other undue means, including the violation of an arbitration discovery order and the failure to produce relevant discovery. The trial court denied the petition to vacate, finding that "[m]ovant did not meet its burden to show that the award was procured by fraud or other undue means." It found that while it was clear that "the alleged permits [filed by Franklin Brothers] existed at the time they were requested" in discovery, plaintiffs had not met their burden to show that the Eastside or Kelleher "possessed or controlled the permits when requested or prior to the [arbitration] trial." Further, it found that the above

quoted arbitration and deposition testimony was ambiguous as to whether defendants had made any knowing misrepresentations or knowingly withheld documents. Finally, it explained that "[i]rrespective, the award must have been *procured* by the alleged fraud or undue means[,]" and that the arbitrators, having been presented with the claimed fraud, nevertheless "unanimously chose not to amend or alter their decisions. That result is relevant." (Emphasis in original.)

Plaintiffs appeal that decision. Before briefly addressing the merits, we turn to the standard of review, which largely drives the result here. Plaintiffs claim that, *under federal law*, we should undertake *de novo* review of the facts that occurred during and right after the arbitration proceeding. But we question how federal law could apply to the standard of review here—plaintiffs have not provided us with any authority that provides that federal law or the Federal Arbitration Act preempt our state court appellate review standards for issues arising under Oregon's Uniform Arbitration Act. Plaintiffs also misstate the type of *de novo* review generally applied in the federal court. Federal courts use the term "*de novo* review" to describe the review of a trial court's legal conclusions for errors of law—the same type of review we apply to those rulings, albeit under a different name. *See Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 582, 152 P3d 940 (2007) (stating that we review legal issues "for errors of law—what the federal courts call '*de novo*' review").

Applying Oregon law, we "review the trial court's findings to determine whether there is any evidence to support them." *Couch Investments, LLC v. Peverieri*, 359 Or 125, 135, 371 P3d 1202 (2016). Further, we note that the burden of persuasion was on plaintiffs in the trial court to demonstrate that defendants engaged in fraud or other undue means that procured the arbitration award. Therefore, plaintiffs must demonstrate that the trial court was required to find or, in other words, could *only* find based on the evidence that defendants engaged in fraud or other undue means. *See State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003) (noting that appellate courts are bound by a trial court's findings,

including a trial court's "finding" that it was not sufficiently persuaded by a party's evidence, if there is evidence in the record to support those findings and unless the evidence is such that the finder of fact "could decide a particular factual question in only one way"); *see also Prime Properties, Inc. v. Leahy*, 234 Or App 439, 449, 228 P3d 617 (2010) (stating same).

We understand plaintiffs to argue that the trial court was required to infer from the facts that defendants' arbitration testimony was fraudulent and that they had intentionally withheld relevant documents during the arbitration. That is, plaintiffs challenge the court's factual findings and the inferences it drew from the evidence. Applying the foregoing standard and reviewing the record, we are not convinced that the trial court was *required* to find that defendants engaged in fraud or other undue means.[2] On this record, the trial court could reasonably determine that plaintiffs had not proved that defendants had possession or control of the building permit applications when the discovery order and discovery requests were issued during the arbitration proceeding. The trial court could also reasonably determine that plaintiffs had not proved that defendants fraudulently testified when they claimed that, at least around the time of the failed closing on August 24, 2019, Kelleher did not intend to be and was not the builder of any lots. Some of the evidence on precisely when Kelleher may have become a builder for the phase three lots was ambiguous or related to dates occurring after the failed phase three closing. A reasonable finder of fact certainly could find otherwise based on the evidence, but the trial court was not required by the evidence to find fraud or other undue means.[3]

---

[2] We note that the elements of fraud generally must be proved by clear and convincing evidence. *Vasquez-Lopez*, 210 Or App at 578-79. However, we do not decide here whether plaintiffs had to prove "fraud or other undue means" under ORS 36.705(1)(a) by clear and convincing evidence or merely by a preponderance of the evidence. We would reach the same result under either standard.

[3] We also reject without further discussion plaintiffs' contention that they necessarily proved to the trial court that defendants' arbitration testimony was fraudulent in a way that affected plaintiffs' arbitration claim against Eastside for failing to deliver "finished lots."

We also agree with the trial court's conclusion that plaintiffs did not prove that any fraud or undue means, assuming for the moment that there were any, procured the arbitration award. *See* ORS 36.705(1)(a). Plaintiffs contend that the trial court erred in entirely deferring to the arbitrators and their decision not to grant a new hearing in response to newly discovered evidence. We do not read the trial court's decision to entirely defer to the arbitration panel. The trial court made its own findings of fact, both explicit and implicit. We understand the court to have considered the arbitrators' decision to deny the motion for a new hearing as at least "relevant" to the question of causation.[4] That conclusion was not erroneous. We also understand the court to have considered plaintiffs' evidence before explicitly finding that plaintiffs had not met their burden to show causation. We again conclude that that finding was not erroneous. For all those reasons, we affirm.

Affirmed.

---

[4] Significantly, the arbitrators had previously and separately concluded that Wolfston's inability to secure funding for the phase three lots caused the phase three closing to fail.